**Pearlie M. CLARK, Plaintiff,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant.**

**No. 90–0617–CV–W–3.**

United States District Court, W.D. Missouri, W.D.

June 26, 1991.

Joan H. Deans, Raytown, Mo., for plaintiff.

Gay L. Tedder, U.S. Attys. Office, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

Plaintiff Pearlie Clark seeks review of the final decision of the Secretary of Health and Human Services. The Secretary found that Clark was not disabled during the relevant period and has denied disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.* On October 25, 1988, Clark filed an application for disability insurance benefits for a period of disability commencing in July 1982. After a hearing, an Administrative Law Judge found that plaintiff did not meet the insured status requirements for entitlement to disability insurance benefits and a period of disability. On May 9, 1990, the Appeals Council denied Clark's request for review, and Clark has petitioned this Court for review. The sole issue presented for review is whether Clark became disabled prior to the expiration of her insured status.

### I.

The standard for judicial review by a district court is whether the decision of the Secretary was supported by substantial evidence on the record as a whole. *Jackson v. Bowen,* 873 F.2d 1111, 1113 (8th Cir.1989). There is an important difference between "substantial evidence" and "substantial evidence on the record as a whole."

> "Substantial evidence" is merely such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." "Substantial evidence on the record as a whole," however, requires a more scrutinizing analysis. In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

*Id.* (citing *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir.1987)). This standard of review requires a searching review of the entire record; the Court must consider the evidence in support of and in opposition to the Secretary's decision. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). "The Court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is

contradictory." *Gavin*, 811 F.2d at 1199 (citing *Steadman v. Securities & Exchange Commission*, 450 U.S. 91, 99, 101 S.Ct. 999, 1006, 67 L.Ed.2d 69 (1981)). Nevertheless, "this standard assumes that two inconsistent conclusions could be drawn from the evidence." *Eichinger v. Bowen*, 878 F.2d 259, 261 (8th Cir.1989).

## II.

■ An individual who alleges the onset of disability after age 31, who has not had a previous period of disability before age 31 and who is not blind has disability insured status, if the individual has at least 20 calendar quarters of coverage in the 40 quarter period ending with the quarter in which the onset of disability is alleged. 42 U.S.C. § 423(c). A claimant must demonstrate that she became disabled prior to the expiration of her insured status. *Thorne v. Schweiker*, 694 F.2d 170, 171 (8th Cir. 1982). In the present case, the parties agree that Clark's insured status expired on March 31, 1985. The sole issue before the Court is whether the Secretary's decision that Clark was not disabled before that date is supported by substantial evidence on the record as a whole.

In her application for disability benefits, Clark claimed that she became disabled in July 1982, when she was 53 years old, due to back pain which radiated into her right leg, headaches, dizziness, and urinary frequency. The only medical evidence in the record concerning Clark's condition prior to March 1985 consists of treatment notes of an attending physician from April 1977 to January 1986.[1] Since the expiration of Clark's insured status, her physical condition has significantly worsened, leading the ALJ to conclude that she is now "probably totally disabled"; given her recent medical history, there can be little doubt that she is indeed totally disabled now.

The crux of this case rests upon the ALJ's determination that Clark's testimony was not credible. The ALJ summarized Clark's testimony as follows:

The claimant testified that she last worked in 1982 as a cashier at a Vicker's service station, and that she was "laid off" because she missed too much work due to back pain. She further testified that her symptoms progressively worsened after July 1982; and that in March 1985 she had low back/right leg pain, headaches/dizziness and problems with urinary frequency, all of which she alleges prevented her from working at that time. She classified the severity of her low back/right leg pain in March 1985 as a constant "8" on a scale of "1 to 10". She classified the severity of her headaches/dizziness as a "7" indicating that these symptoms were present 80% of the time in March 1985. However, she acknowledged that her urinary frequency problems of March 1985 were partly resolved with subsequent kidney stone surgery. She also claimed that in March 1985 she spent a lot of her time lying down for pain relief while further asserting that her pain impaired her memory functioning. Claimant alleged that she sought treatment on several occasions after July 1982 through March 1985 at Martin Luther King Hospital and from a Dr. Spalding, however [she] is unable to obtain documentation of this treatment. She also testified to taking two medications during this period, Talwin for pain which gave only partial relief and caused headaches and Lopressor for hypertension which caused no adverse symptoms. Claimant also acknowledged significant daily activities as discussed in greater detail in other parts of this decision. Claimant also acknowledged that her condition has deteriorated significantly since March 1985 but maintained that even then she spent considerable amounts of time lying down due to pain. Lastly, she denied an ability to work at any full time job due to pain, loss of memory, and need to change positions frequently even prior to March 1985.

Transcript at 11. Clearly, if the above recitation is only mostly true, claimant

---

1. That physician was no longer practicing at the time of the administrative hearing and was apparently unavailable to testify, and records of Clark's hospitalization prior to 1985 were similarly unavailable due to the closing of the treating hospital.

would have gone a long way toward demonstrating her disability. In all important respects, the testimony of Clark's daughter, Margaret Collins, corroborated Clark's testimony. Collins testified that since 1981, when she was living in her parents' home, she and other family members had been helping Clark to perform routine household chores. Transcript at 58. Since 1985, after Collins moved out of the family home, she has been going back to the Clarks' home to help perform household chores. *Id.* Despite the unambiguity of Collins' answers to the questions posed to her by the ALJ, the ALJ found that Collins' "testimony in this regard was vague." *Id.* at 11.

The ALJ also found Collins' "testimony partially contradicted the claimant's testimony." *Id.* at 11. However, the very next sentence in the ALJ's decision refers to a portion of Collins' testimony which was totally corroborative of Clark's: "She testified that since 1979 she has been aware of her mother's back problem and that it progressively worsened after July 1982...." *Id.* Even though the only respect in which Collins' testimony contradicted her mother's was in regard to when she had last raised a garden, the ALJ wrote:

> More importantly, [Collins] testified that in March 1985 claimant planted and maintained a garden, and that prior to March 1985 she observed her mother's ability to sit or stand for approximately 1 hour at a time. This testimony is inconsistent with the claimant's testimony in that claimant testified she unsuccessfully attempted only some yard work in 1985 and needed to change positions frequently at will.

*Id.* at 11–12. In fact, Collins' testimony was corroborative of Clark's. She testified that during the early 1980's Clark had problems walking and doing chores around the house. *Id.* at 56–58. She was aware of her mother's back problems as far back as 1979. *Id.* at 59. She saw her mother slip and fall in 1982 and on other occasions since then. *Id.* at 60. During the five-year period between 1980 and 1985, Collins often saw her mother sitting and lying down due to pain. *Id.* at 60–61.

The notes of the treating physician from 1977 to 1986 lend support to Clark's claims. In 1977 she was treated for back pain, and the notes indicate that she was already experiencing difficulty walking. *Id.* at 113. Conservative treatment continued throughout the following year. *Id.* at 112–13. From 1979 to 1984, Clark's condition was treated with Talwin, Parafon forte, Darvon, Percodan, Soma, Vicodin, Valium, Doloboid, and Flexoril, among other things. *Id.* at 111–12. As early as late 1981, the physician was considering performing an epidural block. *Id.* at 112.

The ALJ relied on later medical notes which indicate that Clark's back problems did not begin until some period after March 1985. *Id.* at 13. Those cryptic notes of Clark's prior medical history are clearly erroneous as demonstrated by the notes from 1977 through 1986. The ALJ also erroneously concluded that one treatment note which indicated that Clark had raked her yard in 1987, "clearly shows claimant participated in significant physical activity well after March 31, 1985...." *Id. See Ricketts v. Secretary of Health and Human Services*, 902 F.2d 661, 663 (8th Cir. 1990) (claimant's ability to carry out trash and to mow lawn is not substantial evidence that he could spend much of an eight-hour day walking and standing).

■ In *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984), the court set forth the relevant standard to be used in evaluating pain and other subjective complaints in cases within the Eighth Circuit. Significantly, the ALJ is not to "disregard a claimant's subjective complaints of pain solely because the objective medical evidence does not fully support them." *Id.*

> The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;

3. precipitating and aggravating factors;

4. dosage, effectiveness, and side effects of medication;

5. functional restrictions.

The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Id.* Although the ALJ cited *Polaski* in his decision, he certainly did not apply it.

In too many instances, the Secretary has come before this Court in defense of decisions in which the adjudicator has completely disregarded *Polaski. Sullivan v. Sullivan,* 738 F.Supp. 332 (W.D.Mo.1990); *Burkart v. Sullivan,* 729 F.Supp. 669 (W.D.Mo.1990); *Irvin v. Bowen,* 1990 WL 130781 (W.D.Mo.1988); *Duke v. Bowen,* 1988 WL 216284 (W.D.Mo.1988); *James v. Bowen,* 1987 WL 11468 (W.D.Mo.1987). In this case it appears that the Secretary has chosen to pay lip-service to *Polaski,* but not to apply it. Every single one of Clark's subjective complaints of pain is independently corroborated by one or more sources. She testified that she has suffered back pain radiating into her right leg since the late 1970's. Both the notes of the treating physician at that time, which show Clark was at times taking strong pain medication, as well as the testimony of Margaret Collins regarding her mother's difficulty walking and frequent tendency to sit and lie down, support this claim. Clark testified to urinary difficulties which ultimately resulted in surgery for the removal of a kidney stone. Although the kidney problems may not be directly relevant to the question of her disability prior to March 1985, they are verified medical complications which bolster Clark's credibility. Since 1985 Clark has suffered a heart attack and her back problems worsened, requiring back surgery. In addition, she has received treatment for migraine headaches, evidence which tends to support her claim of headaches prior to 1985—and there is no evidence in the record which contradicts her claim.

■ The record, taken as a whole, does not support the Secretary's denial of benefits. Clark is now unquestionably a totally disabled person, and there can be no doubt that her present condition did not abruptly surface sometime after March 31, 1985. All of the evidence in the record demonstrates that Clark was in considerable pain for a long period before 1985. Her condition prior to 1985 required her to sit and to lie down frequently. The vocational expert testified that due to the fact that Clark needed intermittently to lie down, she would have been precluded from performing her past relevant work. Transcript at 67–68. A proper consideration of the *Polaski* factors, which are by no means exhaustive, makes obvious that Clark was unable to perform her past relevant work prior to March 1985. Clark's inability to remain in her employment as a cashier—which the vocational expert properly did not consider as past relevant work—shows that her condition was interfering with her ability to perform sedentary work and resulted in her dismissal in 1982. Transcript at 29. The only third party testimony, Collins' testimony, supports Clark's claim of disability prior to March 1985. While the bulk of the medical evidence concerns events after March 1985, the available medical evidence prior to that time shows that Clark's daily activities gradually diminished, that she frequently suffered intense back and leg pain for significant periods of time and that she was on strong medication for the pain well before 1985. All of this uncontradicted evidence against the background of Clark's ensuing serious complications points to only one possible conclusion: Clark was disabled prior to March 1985.

■ In finding Clark incredible, the ALJ relied almost entirely upon Clark's and Collins' testimony that, prior to March 1985, Clark did some household chores, yard work, and church-work—in addition to helping with her daughter's wedding—as evidence that Clark was not experiencing debilitating pain. Collins, however, testified that Clark would "push herself to do things...." *Id.* at 57. The Secretary cannot penalize people who attempt to be ac-

tive despite their physical impairments. Disability benefits are meant to assist such people. "[A]n ability to do light housework does not necessarily indicate an ability to perform gainful employment." *Ricketts,* 902 F.2d at 663 (claimant "occasionally goes to the grocery store, carries out trash, and mows his lawn").

"When the record is overwhelmingly in support of a finding of disability, there is no need to remand to the Secretary for further consideration." *Fowler v. Bowen,* 866 F.2d 249, 253 (8th Cir.1989). In response to a hypothetical question posed by Clark's attorney, the vocational expert testified that a 55–year–old person, with an 11th–grade education, with Clark's past relevant work experience, who suffers chronic pain in the back and leg for which the person takes narcotics and which can be remedied only by lying down intermittently, could not perform any of the past relevant work that Clark performed. Transcript at 68.

> [T]he key is that regardless of the necessity to lie down, just the act of lying down is not going to be tolerated on any of her [Clark's] prior jobs because she'd be missing too much time from the work activity.

*Id.* Because of the unavailability of additional medical evidence regarding Clark's condition prior to March 31, 1985, it would be fruitless to remand this case for further consideration. The only thing which could be accomplished by remanding the case would be to direct the ALJ to pose an appropriate hypothetical question (like the one posed by Clark's counsel) to the vocational expert regarding whether there are any jobs in the national economy which Clark could perform. However, based on the testimony that the vocational expert gave previously and based on the record as a whole, there can be little doubt that Clark was unable to perform *any* employment between July 1982 and March 1985. No other conclusion can be drawn from the evidence on the record as a whole. Accordingly, it is hereby

ORDERED that the Secretary's motion for summary judgment is DENIED and plaintiff's motion for summary judgment is GRANTED. It is further

ORDERED that the Secretary's decision is REVERSED and this case is REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), to the Secretary for the limited purpose of awarding benefits to Clark in the appropriate amount. *Melkonyan v. Sullivan,* —— U.S. ——, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991).

IT IS SO ORDERED.