James **FOWLER**, Appellant,

v.

**Otis R. BOWEN, Secretary of Health and Human Services of the United States, Appellee.**

No. 88–1673.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 19, 1988.

Decided Jan. 18, 1989.

Robert W. Pratt, Des Moines, Iowa, for appellant.

Richard W. Richards, for appellee.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and LARSON,* Senior District Judge.

---

* The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation.

LARSON, Senior District Judge.

Plaintiff James Fowler appeals from the district court's decision affirming the Secretary's denial of disability benefits. Because the denial of benefits was not supported by substantial evidence, we reverse and remand with instructions to enter judgment in favor of Fowler.

## I.

Fowler filed the application for disability benefits at issue in this appeal on July 12, 1983, alleging disability due to a heart attack and emphysema. Plaintiff is now 58 years old. He is severely overweight. His past relevant work was as a sewage treatment plant attendant for the city of Ottumwa, Iowa.

Plaintiff fell backwards off an end-loader at work in October, 1974, after which he experienced pain in his neck, shoulders, and back.[1] He was hospitalized in March, 1976, with a diagnosis of chronic cervical strain. In August of 1979, Fowler was again hospitalized; this time as a result of respiratory difficulties.[2] Chest x-rays showed "significant emphysema and fibrosis with large calcific complex in the left base." His treating physician, Dr. Ebinger, diagnosed his condition as asthmatic bronchitis, persistent and resistant to therapy, with underlying emphysema, which was aggravated by cigarette smoking (three packs daily). Various medications were prescribed, and Fowler reduced significantly his cigarette smoking, but he continued to experience respiratory difficulties. Because of these difficulties, Fowler was unable to perform his job at the sewage treatment plant, and last worked there in September, 1979.

On July 8, 1983, plaintiff was hospitalized with an acute inferior myocardial infarction and chronic pulmonary disease. After his heart attack, he was referred to physicians at the University of Iowa. Physicians there stated Fowler was disabled "primarily due to his lung disease," and increased his medications for this problem.[3] Plaintiff had his gall bladder removed in December, 1983. Several months later, he began to experience blurred vision and syncopal episodes, where he would fall to the floor and did not know how he got there. University of Iowa physicians revised his medications in March of 1984, and he was referred to the neurology department to rule out transient ischemic attacks. The neurology report concluded the ischemic attacks were possible, but the most likely diagnosis was migraine equivalents.

Less than one year later, in February, 1985, plaintiff was admitted to the University of Iowa Surgery Clinic for repair of an incisional hernia. The operation was never performed, however, because the pulmonary medical physician, the cardiologist, and the anesthesiologist all recommended against it based upon plaintiff's heart and lung condition. In view of this recommendation, and based upon the medical evidence and his own treatment of the plaintiff, plaintiff's treating physician, Dr. Ebinger, stated that in his opinion the plaintiff was completely and permanently incapacitated from working, both in 1980 and in 1986.

Reports from consulting physicians are consistent with Dr. Ebinger's opinion. Consulting physician Dr. Ellison diagnosed persistent angina pectoris, and classified plaintiff as a functional Class III–IV patient in March, 1986. Dr. Ellison noted Fowler averaged three to four episodes of angina each week and had shortness of breath and a daily cough with brownish grey phlegm. Consulting physician Dr. Hines found degenerative changes in plaintiff's spine, and although he did not find evidence on plaintiff's CT scan indicative of frequent transient ischemic attacks, he did

---

1. In 1951, Fowler fell from a scaffold, sustaining compound leg fractures and rib fractures. His back pain first began after this fall.

2. A history of pulmonary embolism to the left lung had previously been noted during Fowler's 1951 hospital stay.

3. Fowler's medications at this time included nitropaste, nitroglycerin as needed, Procardia 10 mg q.i.d., Transderm 5 q.d., and an inhaler.

not rule out the possibility of such attacks occurring.

Plaintiff was also seen by a clinical psychologist and a consulting psychiatrist, Dr. McDaniel. The psychologist diagnosed hypochondriasis, a dependent personality disorder, and a possible organic impairment. The psychologist opined that these impairments, in combination with Fowler's physical problems, rendered Fowler disabled at the time of his 1983 heart attack. The consulting psychiatrist found no evidence of organicity, but stated it was possible Fowler had subtle organic brain syndrome which would only show up on psychometrics. The psychiatrist diagnosed major depressive disorder. A clinical psychologist who reviewed the medical records and completed a Psychiatric Review Technique form at the Secretary's request concluded Fowler's mental condition met the requirements for an affective disorder under section 12.04 of the Listing of Impairments. *See* 20 C.F.R. Part 404, Appendix 1, Subpart P, § 12.04 (Affective Disorders) (1988).

## II.

Fowler's 1983 application for benefits first came before an administrative law judge in 1984. At this hearing, Fowler described a very restrictive lifestyle, consisting of reading the paper, taking a nap, and sitting and watching television or sitting outside, weather permitting. Fowler testified he was unable to do any of the chores he used to help with around the house and had not engaged in his hobbies of fishing or hunting for several years. Because of breathing, back, and chest problems, Fowler testified he could walk no longer than a block before he had to rest, could not stand for more than 10 or 15 minutes without becoming dizzy and experiencing pain, and had trouble carrying a bag of groceries even a very short distance. His wife corroborated this testimony.

The administrative law judge found, however, that Fowler was not disabled. On appeal to the district court, Judge William C. Stuart reversed, holding that the ALJ erred in failing to shift the burden of proof to the Secretary once the plaintiff established he could no longer perform his past relevant work and further erred in failing to properly evaluate the plaintiff's complaints of pain. On remand, two supplemental hearings were held; one in February, 1986, and one in July, 1986. Both Fowler and his wife again testified at both supplemental hearings. Fowler testified he had stopped driving some time ago, his back and breathing problems had increased, and his condition was deteriorating to the point that his treating physician had advised him not to lift or exert himself at all. His wife again corroborated his testimony, adding that because of his problems the plaintiff was very difficult to get along with.

In a decision issued after the 1986 supplemental hearings, the ALJ again found plaintiff "not disabled." Rejecting the consulting psychologist's conclusions on the Psychiatric Review Technique form, the ALJ concluded the claimant did not have an impairment which met or equalled the level of severity of the Listing of Impairments. *See* 20 C.F.R. Part 404, Appendix 1, Subpart P, § 12.04 (1988). The ALJ also discounted Dr. Ebinger's opinion that Fowler was totally disabled on the grounds that the University of Iowa clinics—not Dr. Ebinger—had been Fowler's major provider of medical care. The ALJ concluded that reports from these clinics, while showing some major problems, were "not consistent with total disability." Finally, the ALJ discredited the testimony of Fowler and his wife, primarily because Fowler had failed to follow his doctor's advice to quit smoking, because there was no evidence of muscle atrophy or weakness—which the ALJ apparently believed would be consistent with the plaintiff's description of his lifestyle and limitations—and because Fowler arose only once during one of the supplemental hearings complaining of pain.

Based upon testimony by a vocational expert in response to a hypothetical question which assumed Fowler could lift up to 20 pounds and lift up to 10 pounds on a regular basis, the ALJ concluded Fowler retained the residual functional capacity

for a limited range of unskilled light work, such as the job of sorter. The Appeals Council adopted the decision of the ALJ and denied Fowler disability benefits.

### III.

■ Our task is to determine whether the Secretary's decision is supported by substantial evidence. *See Griffon v. Bowen,* 856 F.2d 1150, 1153 (8th Cir.1988); *Martonik v. Heckler,* 773 F.2d 236, 238 (8th Cir.1985). In determining whether the Secretary's decision is supported by substantial evidence on the record as a whole, the court must take into consideration the weight of the evidence in the record both for and against the conclusion reached. *Gavin v. Heckler,* 811 F.2d 1195, 1199 (8th Cir.1987). *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 465, 95 L.Ed. 456 (1951) ("[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight"). In considering the record as a whole in this case, we are convinced that the Secretary's decision is not supported by substantial evidence.

Because Fowler's insured status expired March 31, 1984, his disability must be evaluated as of this date. Subsequent medical, psychological, and psychiatric evaluations are relevant to the extent they reflect upon his condition as of that date, however, and these subsequent reports must be considered as part of a proper evaluation. *See Martonik,* 773 F.2d at 240; *Parsons v. Heckler,* 739 F.2d 1334, 1340 (8th Cir.1984). These subsequent reports reveal Fowler's condition to be a seriously limiting and deteriorating one. Most notably, in February, 1985, less than one year after the expiration of Fowler's insured status, physicians at the University of Iowa recommended against any surgery because of Fowler's precarious physical condition.

■ While the ALJ discounted Dr. Ebinger's opinion that Fowler was totally disabled on the ground that the University —not Dr. Ebinger—had been Fowler's primary source of care, the ALJ completely ignored the University's decision concerning Fowler's proposed hernia surgery. The University's physicians unanimously concluded that Fowler suffered from ischemic heart disease and chronic obstructive pulmonary disease of such severity that the risks of an operation were too great. Deference must be given to the treating physician's opinion, *see, e.g., Douglas v. Bowen,* 836 F.2d 392, 395 (8th Cir.1987); *Piercy v. Bowen,* 835 F.2d 190, 191–92 (8th Cir.1987), particularly where, as here, it involves foregoing otherwise advisable treatment. The ALJ erred in failing to give proper weight to the opinions of Fowler's treating physicians in this case.

■ The ALJ also erred in his evaluation of Fowler's mental state. The ALJ discounted the conclusion of a consulting psychiatrist that Fowler's impairment was of such severity that it met or equalled the Listing of Impairments by claiming a "longitudinal" approach to mental problems was required. The clinical psychologist who examined the plaintiff stated, however, that his dependent personality disorder dated back at least to 1983. Moreover, while the consulting psychiatrist's report contains the slightly different diagnosis of major depressive disorder, this report also lists an onset date of 1983.

■ Finally, the ALJ's reasons for discounting the plaintiff's testimony are unpersuasive. Fowler's testimony, corroborated by his wife and consistent with the medical evidence, revealed an increasingly "moody" individual who could no longer lift, walk more than a block, or stand for any length of time without experiencing chest pain and shortness of breath. The ALJ's reliance on his own observations of the claimant and his own beliefs as to what the medical evidence should show do not constitute substantial evidence supporting his conclusion that Fowler can routinely lift up to 10 pounds and would have no trouble standing, sitting, or walking for eight hours a day, day in and day out under the conditions inherent in a job in the real world. The great weight of both the objective and subjective evidence in this case is to the contrary.

IV.

When the record is overwhelmingly in support of a finding of disability, there is no need to remand to the Secretary for further consideration. *Griffon*, 856 F.2d at 1154; *Gavin*, 811 F.2d at 1201; *Parsons*, 739 F.2d at 1341. The vocational expert testified in response to a hypothetical question containing all of Fowler's limitations that there would be no jobs in the economy which he could perform. We agree with this conclusion, and accordingly, we reverse the decision of the district court and remand with directions to enter a judgment in favor of Fowler awarding him disability benefits in the appropriate amount.