# United States Court of Appeals

### For the Eighth Circuit

———————————————

No. 14-2230

———————————————

Kathleen J. Papesh

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner of Social Security

*Defendant - Appellee*

——————————

Appeal from United States District Court
for the District of Minnesota - Minneapolis

——————————

Submitted: February 10, 2015
Filed: May 27, 2015

——————————

Before BYE, BEAM, and BENTON, Circuit Judges.

——————————

BENTON, Circuit Judge.

Kathleen J. Papesh appeals the denial of her application for disability benefits and supplemental security income. Having jurisdiction under 28 U.S.C. § 1291, this court reverses and remands.

I.

A.

Dr. Richard E. Cash treated Papesh beginning April 3, 2009. She lived with her husband and adult daughter. She had a GED and worked as a bakery helper and cake decorator (previously as a hostess and server). She reported long-term, low-back pain, which radiated to her hips and legs. She said the pain "is worse with working" because the bakery has concrete floors. Dr. Cash observed "tenderness throughout the lumbar spine to palpation, as well as pain with some spasm in the low back." He ordered a MRI.

Papesh turned 50 in late April. She saw Dr. Cash on May 14. She said "the leg achiness and radiating pain on both sides is getting worse and worse, to the point where she is having a hard time working beyond 8 hours when she is asked to in the bakery." She reported she "gets her best relief when she lays on her back with a pillow under her knees and then laying on an ice pack." The straight-leg raise test "in the seated position reproduces her back pain and some radiation into the buttock and thigh but nothing below the knee at all." He observed "a slight antalgic gait, but [Papesh] maneuvers on and off of the exam table without any difficulty at all." The MRI, he noted, "shows multiple level changes with some disc desiccation, some chronic-appearing changes, mild disc bulging that possibly minimally impinge some nerves or nerve roots, but no severe indentations." He assessed, "Chronic low back pain with multiple level changes; radiation down the legs, does not appear to be true radiculopathy to me, but could be coming from the back." He referred her to an interventional pain clinic and to Dr. Jeffrey S. Gerdes, a neurosurgeon.

On May 29, Papesh called Dr. Cash. She reported increasing back pain, higher demands at work during a busy season, and her supervisor's concern about an accident

or further injury. Dr. Cash took her off work for three weeks "to get over busy time of year."

Dr. Gerdes evaluated Papesh four days later. He noted, "She is on high-dose narcotics for [her] condition." He noted the MRI "shows mild spondolytic [sic] changes with mild narrowing at L4-5, otherwise no evidence of impingement." Dr. Gerdes did "not see surgical intervention as an option for her."

Papesh visited Dr. Cash on June 24. After three weeks off work, Papesh reported "this is the best she has felt in years. She states that the horrible leg pain is now gone. . . . She still gets pain and states that she breaks out the ice pack about four times per day, but now she can sit down, lie down with the ice pack as needed and things are extremely manageable."

On September 17, Dr. Cash noted, "She has been off work because of the pain and also to help care for her mother who has severe dementia. Even if she was not caring for her mom, her back pain and generalized pain are precluding her from work." Dr. Cash observed "quite exquisite tenderness over the lower spine and paralumbar musculature to palpation." He assessed Papesh for depression and anxiety. One month later, she visited Dr. Cash "because of worsened depression and anxiety" after her mom's death.

Papesh applied for disability on December 11 (and for supplemental security income on February 2, 2010). She alleged she was disabled, beginning June 1, 2009, due to degenerative disc disease, fibromyalgia, depression, anxiety, and other impairments.

Dr. Cash completed a Lumbar Spine Residual Functional Capacity (RFC) Questionnaire on January 6, 2010. Under Diagnoses, he included chronic low-back pain and degenerative disc disease. He wrote, "Pain is up to 10/10 at times worsened

by lifting, twisting, standing on concrete or other hard surfaces or prolonged sitting." Dr. Cash placed an "X" by abnormal gait and muscle spasm. He opined that Papesh can walk a half-block without rest; continuously sit for 10 minutes and continuously stand for five minutes; sit and stand/walk for less than two hours total in an eight-hour working day; and, occasionally lift and carry less than 10 pounds and never lift or carry 10 or more pounds. He circled "Yes" for "Does your patient have significant limitations in doing repetitive reaching, handling or fingering?"

After Dr. Cash left the medical group, Papesh's physician became Dr. Steven M. Danielson. On January 13, 2010, he noted:

> She has chronic low back pain, fibromyalgia, and additionally has depression with anxiety features and some situational stressors. Her use of narcotics has been stable and consistent. She overall is satisfied with symptom control.

Papesh completed a function report on February 6. She said she iced her back throughout the day, did household chores for 10-15 minutes at a time (without bending, lifting, or reaching), and sometimes needed help tying her shoes.

Papesh saw Dr. Danielson again on February 17. He noted, "Overall she is satisfied with symptom control. . . . There remains some mild tenderness over the lower spine and paralumbar muscles." Under assessments, he listed chronic low-back pain and fibromyalgia.

Dr. Dan Larson, a state-agency physician, completed a physical RFC assessment in checklist format on March 19. He checked that Papesh could occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk six hours total in an eight-hour workday, and sit six hours total in an eight-hour workday. He checked that she could occasionally stoop and crouch and frequently balance, kneel, and crawl. He did not check any limitations on her reaching, handling, and fingering.

When instructed to "Cite the specific facts upon which your conclusions are based," Dr. Larson summarized Dr. Gerdes's letter and Dr. Danielson's February 17 treatment notes.

Papesh completed a second function report on June 3. She said her household activities were now limited to one or two minutes at a time. She said she rarely went out of the house. She wrote, "I just can't stay on my [feet] for more than a few minutes at a time. The more I'm on my feet, the more I hurt." Papesh's daughter completed a third-party function report corroborating Papesh's description of her daily functioning.

Papesh saw Dr. Danielson on July 14. He noted, "Overall, she feels she's been fairly stable. . . . Overall her back pain control seems reasonable. . . . She appears in no distress." On November 3, he noted, "She has chronic pain . . . . Back and leg symptoms worsened with prolonged standing. She does appear mildly distressed." On January 18, 2011, he noted that Papesh had a "normal gait" and was "able to stand without difficulty." On March 4, he noted: "The pain is currently 3/10 in intensity and has been worsening since the last visit. . . . The pain radiates into right upper leg, left upper leg, right lower leg, and left lower leg. The patient reports her current level of activities are significantly impaired."

On March 10, Dr. Roger P. Handrich, a psychiatrist, diagnosed major depression and anxiety. Later that month, Dr. Mark C. Bordewick, a psychologist, diagnosed major depression.

In a June 24 letter, Dr. Danielson opined:

Papesh has impairments which severely limit her ability to function in a competitive workplace environment. She has had longstanding low-back pain with symptoms radiating into both legs. This is felt to be nonsurgical. She does require frequent change of positions. The

symptoms are relieved with lying down.  With utilization of pain medications and timed rest she feels her symptoms are adequately controlled.  Due to her limitations in time that she can be standing or walking, and need to be off her feet for symptom relief, she would have difficulty functioning in a typical workplace environment.  Even with this, she will have some episodic flares of her pain and would be unlikely to maintain a full-time work schedule.  Her pain may flare somewhat unpredictably necessitating unscheduled breaks.

## B.

At a December 15 hearing, Papesh testified, as did Dr. Joseph Horozaniecki, a neutral medical expert, and William Rutenbeck, a neutral vocational expert.  The record included the reports summarized above.

Papesh testified about her pain, saying she "never [has] a day without pain," despite the "strong pain medication."  She also described her daily functioning.  Asked "how far could you walk before you would have to stop," Papesh replied, "Sometimes around the block, sometimes only to the end of the block."  Asked if she helps with any chores, Papesh said her husband and daughter "may bring a basket of laundry for me to fold."  She testified her husband and daughter "[m]ostly" do the cooking, and "they've been taking on a lot more of the household responsibilities" in "the past 15 months."  She said she can stand for "five or 10 minutes" but "[t]hen it hurts and I have to lay down on ice."  She testified her daughter "was taking care of my elderly mother."

Dr. Horozaniecki testified that Papesh's physical impairments included chronic low-back pain and fibromyalgia.  He said the back pain was "due to lumbar degenerative disc disease, which is multi-level and facet arthrosis" and cited three sources in the medical record, including the MRI.  For the fibromyalgia, Dr. Horozaniecki cited two sources, including a note from Dr. Cash, but acknowledged he "did not find any . . . positive physical examination reports to corroborate this

diagnosis." Asked "what kinds of limitations would you impose with the record that you've seen," Dr. Horozaniecki testified he "would impose a sedentary level of exertion" with "only occasional bending, crouching or stooping."

Rutenbeck testified that Papesh's previous jobs were semi-skilled or skilled. He said those skills were not transferrable "to a routine, repetitive" position. Based on a hypothetical person of Papesh's age, education, and work experience who was limited to light, not sedentary, work, Rutenbeck testified she could do unskilled, light jobs, like small-parts assembler (with 5,600 positions in Minnesota) and hand packaging (with 6,800 positions in Minnesota).

C.

In a written decision, the ALJ concluded Papesh has the RFC "to perform light work . . . requiring lifting twenty pounds occasionally and ten pounds frequent[ly], and standing/walking six hours in an eight-hour day, with no high concentration of airway irritants, no climbing of ladders, no work at heights or around hazardous machinery, and no more than occasional bending, crouching, and stooping. [She] is limited to routine, repetitive instructions and tasks, brief and infrequent contact with coworkers, and routine stressors." *See* **20 C.F.R. § 404.1567(b)**. Based on Rutenbeck's testimony, the ALJ concluded Papesh was not disabled because she was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy."

The ALJ gave "great weight" to the conclusions of Dr. Larson, an "expert[] in the evaluation of the medical issues in disability claims." The ALJ did *not* give "great weight" to the opinions of Dr. Cash (because "inconsistent with the overall evidence of record" and two other reasons); Dr. Danielson ("inconsistent with [his] own treatment notes" and appears "based on the claimant's subjective assertions of pain");

-7-

and Dr. Horozaniecki's (lacking "any significant objective medical evidence"). The ALJ found Papesh's daughter "sincere."

After the Appeals Council denied review, Papesh sought judicial review under 42 U.S.C. § 405(g). A magistrate judge, sitting with the parties' consent, affirmed the denial of benefits. Papesh appeals.

## II.

This court reviews de novo the decision affirming the denial of benefits. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). This court affirms "if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). It "is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). This court "will disturb the ALJ's decision only if it falls outside the available zone of choice." *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). "An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

A five-step process determines whether a claimant is disabled. *Lott v. Colvin*, 772 F.3d 546, 548 (8th Cir. 2014); **20 C.F.R. §§ 404.1520(a)(4)**, **416.920**. "Step four requires the ALJ to consider whether the claimant retains the RFC to perform her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "The ALJ must determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th

Cir. 2012) (brackets omitted). Papesh bears the burden of proving her RFC. *See Baldwin*, 349 F.3d at 556.

Even if Papesh cannot perform past relevant work, she is not entitled to benefits if, at step five, the Commissioner shows she has the physical RFC "to perform a significant number of other jobs in the national economy that are consistent with her impairments and vocational factors such as age, education, and work experience." *See Phillips*, 671 F.3d at 702.

Physically, Papesh argues that the substantial evidence on the record as a whole supports a finding that she can perform sedentary work only. *See* **20 C.F.R. § 404.1567(a)** ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.").

A.

This court begins with the opinions of Papesh's two treating physicians, Drs. Cash and Danielson. They "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *See id.* **§ 404.1527(c)(2)**. The ALJ must give "controlling weight" to a treating physician's opinion if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Wagner v. Astrue*, 499 F.3d 842, 848-49 (8th Cir. 2007) (internal quotation marks and emphases omitted). *See* **S.S.R. 96-2p**, **Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions**, 1996 WL 374188 (July

2, 1996) ("Not inconsistent . . . is a term used to indicate that a well-supported treating source medical opinion need not be supported directly by all of the other evidence (i.e., it does not have to be consistent with all the other evidence) as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion.").

"Even if the [treating physician's] opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007). It may have "limited weight if it provides conclusory statements only, or is inconsistent with the record." *Id.* (citations omitted). The ALJ "may discount or even disregard the opinion . . . where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Miller v. Colvin*, 2015 WL 1881189, at *4, ___ F. 3d ___, ___ (8th Cir. Apr. 27, 2015).

After treating Papesh for 18 months, Dr. Danielson opined she "has impairments which severely limit her ability to function in a competitive workplace environment." The ALJ said it "does not give this opinion great weight because it is inconsistent with Dr. Danielson's own treatment notes" and "appears to be based on the claimant's subjective assertions of pain."

The ALJ's reasons are potential bases to not give *controlling* weight to Dr. Danielson's opinion. *See Wagner*, 499 F.3d at 848-49. This court assumes, without deciding, that Dr. Danielson's opinion warrants non-controlling weight. But the ALJ offered no basis to give the opinion non-*substantial* weight. For example, the ALJ did not find the opinion inconsistent with the record, *Samons*, 497 F.3d at 818, or another Dr. Danielson opinion, *Miller*, 2015 WL 1881189, at *4, ___ F. 3d at ___.

After treating Papesh for nine months, Dr. Cash opined that Papesh is limited to sedentary work.  The ALJ said it "does not give [Dr. Cash's opinion] great weight because it is [1] inconsistent with the overall evidence of record, including the medical opinion of [Dr. Larson], and appears to be [2] based primarily on the claimant's subjective assertions of disability."  The ALJ added that there was [3] "no objective medical evidence to support" Dr. Cash's limitation that Papesh not engage in any repetitive handling.

The second and third reasons are potential bases to not give controlling weight to Dr. Cash's opinion.  *See Wagner*, 499 F.3d at 848-49.  This court addresses the first reason because it is a basis to give the opinion non-substantial weight.  *See Samons*, 497 F.3d at 818.  Dr. Cash's opinion contradicts *one* opinion that is not entitled to substantial weight, Dr. Larson's.  *See* **Part II(B)**.  But Dr. Cash's opinion is consistent with all other evidence—the opinions of Drs. Danielson and Horozaniecki as well as Papesh's descriptions of her limitations.  This court concludes Dr. Cash's opinion is not inconsistent with the *overall* evidence of record.  *See* **S.S.R. 96-2p**.

The opinions of Drs. Cash and Danielson are entitled to substantial weight.

B.

This court next considers the opinions of the two nonexamining physicians, Drs. Horozaniecki and Larson.  "[T]he opinions of nonexamining medical sources are generally given less weight than those of examining sources."  *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010) (ellipsis omitted).  "That is especially true when, like here, the nonexamining expert's opinion is given in checklist format."  *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011) (noting that "checklist format, generality, and incompleteness of the assessments limit the assessments' evidentiary value" (brackets omitted)).  "[B]ecause nonexamining sources have no examining or treating relationship . . ., the weight we will give their opinions will depend on the degree to

which they provide supporting explanations for their opinions." **20 C.F.R. § 404.1527(c)(3)**.

Dr. Horozaniecki testified that Papesh's physical impairments included chronic low-back pain and fibromyalgia. He testified the back pain was "due to lumbar degenerative disc disease, which is multi-level and facet arthrosis" and made three citations to the medical record, including the MRI. As for the fibromyalgia, Dr. Horozaniecki cited two sources, including a note from Dr. Cash, but acknowledged he "did not find any . . . positive physical examination reports to corroborate this diagnosis." Asked "what kinds of limitations would you impose with the record that you've seen," Dr. Horozaniecki testified he "would impose a sedentary level of exertion" with "only occasional bending, crouching or stooping."

The ALJ said it "does not give his opinion great weight" because of "the absence of any significant objective medical evidence."[1] The ALJ misconstrues Dr. Horozaniecki's testimony. The three citations to the medical record, including the MRI, sufficiently support his testimony that Papesh had chronic low-back pain. While acknowledging he could not corroborate a fibromyalgia diagnosis with any "positive physical examination reports," he cited Dr. Cash's note. This court cannot determine whether Dr. Horozaniecki, when making his sedentary-exertion opinion, accounted for the lack of corroboration. But it does not matter because the ALJ did not completely reject Dr. Horozaniecki's opinion. *See **Wagner***, 499 F.3d at 848 ("The ALJ may reject the conclusions of any medical expert . . . if they are inconsistent with the record as a whole."). Instead, the ALJ did "not give his opinion great

---

[1]The ALJ points to treatment notes indicating Papesh moved on and off an exam table without difficulty and had mild tenderness and no radiculopathy. However, the treatment notes also indicated Papesh had antalgic gait, limited range of motion, degenerative disc disease, and consistent tenderness over her lumbar area. While her doctors recommended exercise and physical therapy, they also referred her to a neurosurgeon and an interventional pain clinic.

weight"—the same weight the ALJ gave the opinions of Drs. Cash and Danielson. Thus, Dr. Horozaniecki's opinion is evidence on the record, although this court assumes, without deciding, it is not entitled to substantial weight. *But cf.* **20 C.F.R. § 404.1527(c)(4)** ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.").

In contrast, the ALJ gave "great weight" to Dr. Larson's opinion that Papesh retained the physical capacity to perform light work. To the extent the ALJ gave Dr. Larson's opinion substantial weight, the ALJ erred. First, the opinion is in checklist format. *See McCoy*, 648 F.3d at 615. Second, this court is unimpressed by "the degree to which [Dr. Larson] provide[d] supporting explanations for [his] opinion[]." *See* **20 C.F.R. § 404.1527(c)(3)**. Instructed to "Cite the specific facts upon which your conclusions are based," Dr. Larson summarized Papesh's medical history in 19 lines of text. His summary references just two post-June 1, 2009, sources—Dr. Gerdes's letter and one day of Dr. Danielson's treatment notes. Dr. Larson makes no reference to Dr. Cash's opinion or treatment notes. Nor does Dr. Larson reconcile the limitations Papesh described in her first function report.[2]

## C.

The ALJ discredited Papesh's subjective allegations of pain. "We defer to the ALJ's evaluation of [Papesh's] credibility provided that this determination is supported by good reasons and substantial evidence." *See Turpin v. Colvin*, 750 F.3d 989, 993 (8th Cir. 2014). "We do not consider impairments controllable by treatment

---

[2]The government argues that Dr. Horozaniecki's testimony supports the ALJ's RFC determination because both Dr. Horozaniecki and Dr. Larson recommended limitations on airway irritants, heights, and bending. Those consistencies are trivial in this dispute, and the doctors reached opposite conclusions on *the* issue—whether Papesh has the RFC to perform light work (Dr. Larson) or sedentary work (Dr. Horozaniecki).

or medication to be disabling." *Id.* In July 2010, Dr. Danielson reported, "Overall her back pain control seems reasonable."

The ALJ also discredited Papesh because "[t]reatment notes from September 2009 indicate [Papesh] was off work due to her pain but also to help care for her mother." The ALJ misread Dr. Cash's September 17, 2009, treatment note: "Even if she was not caring for her mom, her back pain and generalized pain are precluding her from work." The ALJ did not draw inconsistencies between Papesh's "care for her mother" and Papesh's description of her own limitations. The record never defines what kind or how much care Papesh provided, and Papesh testified her daughter "was taking care of my elderly mother."

The ALJ did not challenge Papesh's testimony about her daily functioning. That testimony is evidence warranting some weight, and it is consistent with the opinions of Drs. Cash, Danielson, and Horozaniecki. Asked "how far could you walk before you would have to stop," Papesh testified, "Sometimes around the block, sometimes only to the end of the block." When asked if she helps with any chores, Papesh testified her husband and daughter "may bring a basket of laundry for me to fold." She testified her husband and daughter "[m]ostly" do the cooking, and "they've been taking on a lot more of the household responsibilities" in "the past 15 months." She said she can stand for "five or 10 minutes" but "[t]hen it hurts and I have to lay down on ice." In her first function report, Papesh said she iced frequently and sometimes needed help tying her shoes. In her second function report, Papesh said her household activities were limited to one or two minutes, and she rarely went out of the house. She wrote, "I just can't stay on my [feet] for more than a few minutes at a time. The more I'm on my feet, the more I hurt." Papesh's daughter, whom the ALJ found "sincere," corroborated these reports.

## D.

Dr. Larson's checklist opinion stands alone, unsupported by any substantial evidence. Even if his opinion warranted substantial weight, it is directly contradicted by another opinion entitled to substantial weight, Dr. Cash's. *Another* opinion entitled to substantial weight, Dr. Danielson's, is consistent with Dr. Cash's and is inconsistent with Dr. Larson's. The remaining evidence—Dr. Horozaniecki's opinion and Papesh's testimony—contradicts Dr. Larson's opinion and is consistent with the opinions of Drs. Cash and Danielson.

This case is like *Leckenby v. Astrue*, 487 F.3d 626 (8th Cir. 2007). There, this court remanded the denial of benefits because the record as a whole contained "substantially similar RFC opinions from three independent treating physicians . . . that are consistent with the treatment notes" and the claimant's daily activities. *Leckenby*, 487 F.3d at 635. The record here contains two substantially similar RFC opinions from a treating physician and neutral medical expert plus a consistent opinion from a second treating physician—all consistent with the claimant's descriptions of her daily functioning.

The ALJ's determination that Papesh can perform light work falls outside the available zone of choice. The substantial evidence on the record as a whole supports a finding that Papesh is capable of sedentary work only.

## III.

Papesh asks this court to order the Commissioner to pay benefits. "We may enter an immediate finding of disability only if the record 'overwhelmingly supports' such a finding." *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (noting this court's ordinary practice is to remand "out of our abundant deference to the ALJ"). *See Fowler v. Bowen*, 866 F.2d 249, 253 (8th Cir. 1989) (remanding with directions

to enter judgment awarding benefits because vocational expert testified there were no jobs claimant could perform).

Papesh cites Grid Rule 201.14 of Appendix 2 to Subpart P of Part 404, the Medical-Vocational Guidelines. It directs a finding of "Disabled" when: (1) the maximum sustained work capability is limited to sedentary work, (2) the claimant is closely approaching advanced age, (3) the claimant is a high school graduate or more and her education does not provide for direct entry into skilled work, and (4) the claimant's work experience involved skilled or semi-skilled work and those skills are not transferable. The ALJ found that Papesh, aged 50 at her alleged onset date, was closely approaching advanced age. *See* **20 C.F.R. § 404.1563(d)**. The ALJ found that Papesh has "at least a high school education"; while the ALJ did not make a finding about whether her education provided for direct entry into skilled work, Rutenbeck testified she would be limited to unskilled work. The ALJ found that Papesh's past work involved skilled or semi-skilled work; while the ALJ did not make a finding about the transferability of her skills, Rutenbeck testified her skills were not transferable. The Commissioner makes no argument that Grid Rule 201.14 does not apply, but the ALJ stated that transferability was "not material" in his (now-reversed) order. Although Grid Rule 201.14 appears to control, this issue is left for remand. *Cf.* ***Stewart v. Sec'y of Health & Human Servs.***, 957 F.2d 581, 587 (8th Cir. 1992) (reversing and remanding for entry of judgment awarding benefits when Grid Rule 201.14 applied).[3]

\* \* \* \* \* \* \*

The judgment is reversed, and the case remanded for proceedings consistent with this opinion.

_____

_____

[3]This court need not address the parties' mental RFC arguments.

-16-