ROBERT W. PRATT, U.S. DISTRICT JUDGE
Plaintiff, Traci Lee Brooks, filed a Complaint in this Court on July 21, 2017, seeking review of the Commissioner's decision to deny her claim for Social Security benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq. and 1381 et seq. This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g).
Plaintiff filed an application for Title II benefits on May 15, 2014. Tr. at 160-61. Plaintiff was forty-five years old at the time of a hearing on April 21, 2016, before Administrative Law Judge John E. Sandbothe (ALJ). Tr. at 29-50. The ALJ issued a Notice of Decision - Unfavorable on June 2, 2016. Tr. at 7-22. On September 21, 2016, the Appeals Council declined to review the ALJ's decision. Tr. at 1-3. Thereafter, Plaintiff commenced this action.
The ALJ noted that Plaintiff meets the insured status requirements of the Social Security Act until December 31, 2018. At the first step of the sequential evaluation, 20 C.F.R. § 404.1520(a)(4), the ALJ found that Plaintiff had not engaged in substantial gainful activity after July 10, 2013, the alleged disability onset date. At the second step, the ALJ found that Plaintiff had the following severe impairments: morbid obesity ; fibromyalgia ; major depressive disorder ; generalized anxiety disorder ; panic disorder ; and rule-out personality disorder. Tr. at 12. The ALJ found that Plaintiff's impairments were not severe enough to qualify for benefits at the third step of the sequential evaluation. Tr. at 13. At the fourth step, the ALJ found:
After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) such that she could lift 20 pounds occasionally and 10 pounds frequently; only occasionally balance, stoop, kneel, crouch, crawl or climb; simple, routine, repetitive tasks; no contact with the public; and no specific production rate requirements.
*961 Tr. at 14. The ALJ found that Plaintiff is unable to perform any of her past relevant work. At the fifth step of the sequential evaluation, the ALJ found that jobs exist in significant numbers which the claimant can perform. Tr. at 21. Examples of such jobs are cleaner/housekeeper, folder, and marker. It was the ALJ's decision that Plaintiff is not disabled nor entitled to the benefits for which she applied. Tr. at 22.
For reversal, Plaintiff argues the ALJ erred by failing to afford controlling weight to the opinion of the treating psychologist, Kenneth J. Israel, Ph.D. Plaintiff also argues the ALJ improperly weighed the opinion rendered by the nurse practitioner who prescribed Plaintiff's psychiatric mediation. Plaintiff argues the ALJ's finding of residual functional capacity is flawed because it is not supported by medical evidence from a treating or examining source. Plaintiff also argues that the ALJ improperly discounted her subjective allegations.
MEDICAL EVIDENCE
In this voluminous (approximately 900 pages) medical record, Plaintiff received medical care for all of the impairments that the ALJ found to be severe at step two of the sequential evaluation. In the following summary, the Court will highlight only those entries that are most relevant to the central issue of this case, i.e., whether the ALJ erred by failing to accord controlling weight to Dr. Israel's opinion.
Over the years covered in this record, Plaintiff saw several health care providers for the medical management of her mental health impairments. Changes in providers were often dictated by changes in Plaintiff's health insurance. Plaintiff saw Judy Gonzalez, PMHNP-BC, at the clinic of James R. Trahan, M.D. It was noted that Plaintiff had a history of panic attacks and diagnoses were noted to be major depressive disorder and generalized anxiety disorder. Tr. at 465. Plaintiff's psychiatric medication was prescribed by Ana A. Valencia, ARNP, at Unity Point Health counseling and psychiatry clinic. The record reflects ongoing treatment at this clinic, as well as at other mental health clinics, for medication management of these disorders. Medication, prescribed at various times, included Lexapro, Effexor XL, Trazodone, Lorazepam, Clonazepam, Abilify, Klonopin, Amitriptyline, Wellbutrin, Savella, Duloxetine HCI (Cymbalta ), and Buspar.
Much of Plaintiff's medical care took place at McFarland Clinic in Ames, Iowa. Plaintiff was seen in the hematology and oncology clinic because of a history of breast cancer. Plaintiff saw rheumatologists for treatment of fibromyalgia Those specialists included David D. Gerbracht, M.D., and Mary Radia, D.O., both of whose examinations showed multiple tender points consistent with their diagnoses of fibromyalgia. Tr. at 381.
On January 5, 2012, Plaintiff saw Dr. Israel at Ames Counseling and Psychological Services. It is clear this was not Plaintiff's first visit with Dr. Israel because Plaintiff noted that she had only one panic attack since the last appointment. Plaintiff also complained of fatigue. Tr. at 494. Thereafter, Plaintiff saw Dr. Israel on a regular basis-usually three or four times each month. Tr. at 493-580, 1130-1210.
In his treatment notes, Dr. Israel sometimes expressed his opinion on Plaintiff's ability to work. Some examples of those notations are:
• January 31, 2013: "I am concerned about her ability to maintain her job, given her current level of impairment." Tr. at 514.
• February 7, 2013: "Clearly her level of depression and anxiety is impacting *962 her work performance. It may be in her best interest to consider a reduced workload or several weeks of disability leave to help her gain traction in addressing these long-standing issues." Tr. at 515.
• February 28, 2013: Dr. Israel noted Plaintiff was on short-term disability but that she hoped to return to work in three weeks. Tr. at 518.
• March 7, 2013: Dr. Israel opined Plaintiff would not be able to return to work the following week as previously planned. Tr. at 519.
• March 21, 2013: Dr. Israel recommended Plaintiff should attempt to gradually return to work over the next several weeks. Tr. at 521.
• March 28, 2013: Dr. Israel noted Plaintiff was attempting to return to work as he had recommended. Tr. at 522.
• May 30, 2013: Dr. Israel noted Plaintiff was better able to attend work and to complete her shifts, although fatigue and pain remained problems. Tr. at 529.
• June 13, 2013: Dr. Israel noted Plaintiff was having difficulty with her sleep and was experiencing fatigue, which was interfering with her work attendance. Tr. at 530.
• June 20, 2013: Dr. Israel noted Plaintiff had missed two of the previous four days of work due to fatigue and pain. Tr. at 531.
• June 27, 2013: Dr. Israel noted Plaintiff continued to struggle with work. Dr. Israel raised the possibility of filing for disability. He wrote, "She is reluctant to do this. She feels some sense of shame about it but reality is that her physical condition is making it very difficult for her to work full time." Tr. at 532.
• July 11, 2013: Dr. Israel again noted Plaintiff would, at some point, need to consider disability because her current condition did not allow for consistent work attendance or the ability to function at work. Tr. at 533.
• August 8, 2013: Dr. Israel noted Plaintiff struggled to sustain pace and effort for almost any activity. He wrote, "She does not appear better able to work at her job despite financial need." Tr. at 536.
• On October 31, 2013: Plaintiff reported she had been notified that her job and benefits were about to be terminated. Dr. Israel noted he would be in contact with Plaintiff's primary care physician to provide any assistance requested of him. Dr. Israel wrote: "In my conversations with the reviewer it seems that the lack of a specific medical diagnosis is creating some problems in certifying her disability. She is still seeking medical answers but very clearly is impaired. Her level of fatigue precludes sustained effort at virtually any activity in her life at present." Tr. at 547.
• May 1, 2014: Dr. Israel noted Plaintiff continued to struggle with anxiety, dysphoria, fatigue, and pain. He further noted Plaintiff's focus, concentration, and general stamina were all impacted by the impairments. Dr. Israel noted that, even when Plaintiff paced herself, she was frequently unable to complete routine tasks. Tr. at 572.
• September 24, 2014: Because of the increase in Plaintiff's depression, Dr. Israel suggested hospitalization, but Plaintiff stated that, with the support of her family, she would be able to maintain her safety. Tr. at 1139.
*963 On February 12, 2016, Dr. Israel completed a questionnaire. Tr. at 623-24. In it, he wrote that Plaintiff's diagnoses were major depressive disorder and generalized anxiety disorder, both of which are chronic. The doctor opined that Plaintiff is not capable of working because her symptoms are persistent and significant. Tr. at 623. On a "check the box" form, the doctor indicated Plaintiff would have marked limitations in the ability: To maintain attention and concentration for extended periods; to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; to respond appropriately to expected or unexpected changes in the work setting. The doctor opined that Plaintiff had a mild limitation in the ability to understand and remember very short and simple repetitive instructions or tasks. Tr. at 624.
On February 15, 2016, Nurse Valencia, the advanced registered nurse practitioner who prescribed Plaintiff's psychiatric medication, completed a residual functional capacity questionnaire. Tr. at 595-96. The nurse opined that Plaintiff was mildly limited in the following areas: to understand and remember very short and simple repetitive instructions or tasks; to interact appropriately with the general public; to accept instruction and respond appropriately to criticism from supervisors; to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes. Plaintiff would be moderately limited in the following areas: to maintain attention and concentration for extended periods; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public or customers; to respond appropriately to expected or unexpected changes in the work setting. The nurse noted Plaintiff has significant problems with depression and anxiety that cause problems with focus and concentration. The nurse noted anxiety greatly affects Plaintiff's ability to interact with others. The nurse also noted that, because of anxiety, Plaintiff does not do well with unexpected change. Tr. at 595. Nurse Valencia wrote she had treated Plaintiff for a year. Diagnoses were: major depressive disorder, recurrent, moderate; and generalized anxiety disorder. The nurse opined that Plaintiff's symptoms are too severe for Plaintiff to obtain and maintain work on a sustained basis. Tr. at 596.
STATE AGENCY PHYSICIANS' OPINIONS
On July 18, 2014, Plaintiff's claim was reviewed by Lon Olsen, Ph.D., a State agency psychological consultant. Dr. Olsen noted that Plaintiff had been in psychotherapy with the psychologist for at least two years and that she was treated with medication at various clinics. Dr. Olsen wrote:
The claimant's allegations about her functional limitations are credible and her presentation is consistent. While she does have some limitations, they do not prevent her from engaging in purposeful activity when she is motivated to do so. She is independent for self-cares and for taking medication. She helps care for the family pets, prepares meals, and does light household tasks. She is able to go places alone, unless she is feeling very anxious. She drives, shops, pays *964 bills, and manages money. She stays in touch with friends every day through email and texting. She socializes with friends, visits her father several times a month, participates almost daily in an online fibromyalgia group and keeps appointments. She would be capable of simple, repetitive tasks that do not require intense concentration or unremitting pace. She will need some support when adjusting to changes in routine. [Medically Determinable Impairments] are major depressive disorder, generalized anxiety disorder and rule out personality disorder.
Tr. at 71.
On July 28, 2014, Plaintiff's claim was reviewed by Lawrence Staples, M.D., a State agency medical consultant. Dr. Staples determined Plaintiff's medically determinable impairments are fibromyalgia, obesity, and history of breast cancer without recurrence. The doctor opined that Plaintiff retains the residual functional capacity to lift twenty pounds occasionally, and ten pounds frequently; can stand and/or walk about six hours and can sit about six hours in a work day. Tr. at 68. It was the initial determination that Plaintiff, while unable to do past relevant work was able to do unskilled work such as mail clerk or order caller. Tr. at 72.
On September 15, 2014, John May, M.D., a State agency medical consultant, reviewed Plaintiff's claim and affirmed the findings made by Dr. Staples. Tr. at 83. Also on September 15, 2014, David A Christiansen, Ph.D., a State agency psychological consultant reviewed Plaintiff's claim and determined that there were no changes or new allegations. Dr. Christiansen affirmed the findings made by Dr. Olsen. Tr. at 85.
ADMINISTRATIVE DECISION
In his decision, the ALJ wrote that he accorded some weight to the opinion rendered by Dr. Israel but found that Plaintiff's reported level of activity failed to support the degree or marked limitations assessed by Dr. Israel. The ALJ accorded some weight to Nurse Valencia's opinion "to the extent that the claimant experienced difficulty with concentration and focus on a daily basis which would carry-over to the work environment." The ALJ went on: "To this end, the degree of limitation assessed, while more consistent with the claimant's level of reported activities, in the context of chronic and persistent mental health issues, was inconsistent with the ability to perform work-related activities." The ALJ accorded "significant weight" to the opinions rendered by the State agency medical and psychological consultants. Tr. at 20. The ALJ wrote:
Ongoing treatment records fail to support indicate (sic) changes in mental status physical or neurological examination and no further deterioration of function. However, given the claimant's assertion of anxiety dealing with customers and difficulty being in an (sic) crowds, the undersigned finds it reasonable to set forth a more restrictive residual functional demands (sic) precluding public contact (Ex 2A, 4A).[1]
Tr. at 21.
DISCUSSION
We will affirm the ALJ's decision "[i]f the ALJ's findings are supported by substantial evidence on the record as a whole," an inquiry that requires us to consider evidence in the record that detracts *965 from the ALJ's decision. Wagner v. Astrue , 499 F.3d 842, 848 (8th Cir. 2007). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the decision." Reutter ex rel. Reutter v. Barnhart , 372 F.3d 946, 950 (8th Cir. 2004).
We will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.' " Bradley v. Astrue , 528 F.3d 1113, 1115 (8th Cir. 2008) (quoting Nicola v. Astrue , 480 F.3d 885, 886 (8th Cir. 2007) ). The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact." Id. (quoting Nicola , 480 F.3d at 886 ). Rather, "[i]f, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Goff v. Barnhart , 421 F.3d 785, 789 (8th Cir. 2005).
Owen v. Astrue , 551 F.3d 792, 798 (8th Cir. 2008) (alterations in original). In Brand v. Secretary of Dep't of Health, Education and Welfare , 623 F.2d 523, 527 (8th Cir. 1980), Chief Judge Lay wrote that Universal Camera Corp. v. NLRB , 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), is "the guideline for the evaluation of the standard of review." In Universal Camera , the Court wrote:
We conclude, therefore, that the Administrative Procedure Act and the Taft-Hartley Act direct that courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. Reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function. Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds. That responsibility is not less real because it is limited to enforcing the requirement that evidence appear substantial when viewed, on the record as a whole, by courts invested with the authority and enjoying the prestige of the Courts of Appeals. The Board's findings are entitled to respect; but they must nonetheless be set aside when the record before a Court of Appeals clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both.
340 U.S. at 490, 71 S.Ct. 456. In reviewing disability decisions from the Social Security Administration, the Court sits in an appellate capacity and is responsible for giving the agency decision a scrutinizing analysis. This requires the Court to determine the substantiality of the evidence by determining if the ultimate decision is supported by substantial evidence on the record as a whole. Gavin v. Heckler , 811 F.2d 1195, 1199 (8th Cir. 1987). In Gavin , the Court wrote:
In the review of an administrative decision, "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory. It follows that the only way a reviewing court can determine if the entire record was taken into consideration is for the district court to evaluate in detail the evidence it used in making its decision and how any contradictory evidence balances out.
Id. (citations omitted).
In short, a reviewing court should neither consider a claim de novo, nor abdicate *966 its function to carefully analyze the entire record. Wilcutts v. Apfel , 143 F.3d 1134, 1136-37 (8th Cir. 1998) (citing Brinker v. Weinberger , 522 F.2d 13, 16 (8th Cir. 1975) ).
The most important issue in any disability case that proceeds beyond step three of the sequential evaluation is that of residual functional capacity:
Probably the most important issue will be the question of [residual functional capacity].... The RFC that must be found ... is not the ability merely to lift weights occasionally in a doctor's office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world.
McCoy v. Schweiker , 683 F.2d 1138, 1147 (8th Cir. 1982) (en banc).
EVALUATION OF DR. ISRAEL'S OPINION
Title 20, section 1527 of Part 404 of the Code of Federal Regulations is entitled, "Evaluating Opinion Evidence for Claims Filed Before March 27, 2017." As noted above, Plaintiff's claim was filed on May 15, 2014. Section 404.1527(a)(2) states: "Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." More weight is given to the opinion of the treating source because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." 20 C.F.R. § 404.1527(c)(2). Section 404.1527(a)(1) states: "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." The regulation at 404.1527(c)(2) states, in pertinent part: "If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." A licensed psychologist is an acceptable medical source. See 20 C.F.R. § 404.1502(a)(2). There are a few issues that are reserved to the Commissioner and will not be given evidentiary weight. See 20 C.F.R. § 404.1527(d). For example, an opinion that a claimant is disabled, or unable to work, is an opinion reserved to the Commissioner. Id. § 404.1527(d)(1).
In Papesh v. Colvin , 786 F.3d 1126, 1132 (8th Cir. 2015), the Court, citing Social Security Ruling ( SSR) 96-2p, 1996 WL 374188 (July 2, 1996), noted that the term "not inconsistent" does not mean that a well-supported treating source medical opinion needs to be consistent with all the other evidence as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion. The SSR states that if a treating source's medical opinion is well-supported and not inconsistent with the other substantial evidence in the case record, "it must be given controlling weight; i.e. it must be adopted." SSR 96-2p, 1996 WL 374188, at *1.
The Ruling cited in Papesh states that controlling weight applies when all of the following are present: (1) the opinion must come from a treating source; (2) the opinion must be a medical opinion about the *967 nature and severity of the impairment(s); (3) the opinion must be found to be well-supported by medically acceptable clinical and laboratory diagnostic techniques, i.e. there must be "some reasonable support for the opinion;" and (4) the medical opinion must be "not inconsistent" with the other substantial evidence in the record. Id. When all of these factors are met, "the adjudicator must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion." Id. at *2 (emphasis added).
Applying the principles set forth in the aforementioned regulations, it is clear that: (1) Dr. Israel is a treating source, and an acceptable source of medical information as defined by the regulations; (2) Dr. Israel opined regarding the nature and severity of Plaintiff's impairments; (3) there is no evidence to suggest, nor did the ALJ find, that Dr. Israel's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (4) there is no substantial evidence in this record that is inconsistent with Dr. Israel's opinion.
Rather than subject Dr. Israel's opinion to the Commissioner's clear directive, the ALJ merely wrote that he had considered the doctor's opinion and accorded it "some weight." The ALJ wrote: "The level of activity reported by the claimant failed to support the degree of marked limitations assessed." Not only does this statement fall short of the requirements set forth in SSR 96-2p, but it is contrary to the law of the Eighth Circuit, which states that an ALJ may not substitute his judgment for that of the physician. See Ness v. Sullivan , 904 F.2d 432, 435 (8th Cir. 1990) ("[T]he ALJ ignored the law of this circuit, which states that the ALJ must not substitute his opinions for those of the physician." (citing Fowler v. Bowen , 866 F.2d 249, 252 (8th Cir. 1989) ) ); see also Wilder v. Chater , 64 F.3d 335, 337 (7th Cir. 1995) ("Severe depression is not the blues. It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it.").
Dr. Israel completed a questionnaire, see Tr. at 623-24, in which he identified Plaintiff's diagnoses as major depressive disorder and generalized anxiety disorder, both of which are chronic. The doctor opined that Plaintiff is not capable of working-an opinion reserved to the Commissioner-however, the doctor also told us that Plaintiff's symptoms are persistent and significant. Dr. Israel opined that Plaintiff was markedly limited in several significant areas of functioning: to maintain attention and concentration for extended periods; to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; to get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; to respond appropriately to expected or unexpected changes in the work setting. Tr. at 624.
As stated above, because all four of the regulatory criteria were met, it was error for the ALJ to not have given controlling weight to the medical opinion rendered by Dr. Israel regarding the nature and severity of Plaintiff's impairment.
Turning now to the question of remedy, it is the opinion of the Court that the case must be reversed and remanded for an award of benefits. In Gavin , the ALJ erred by finding that Gavin was able to perform his past relevant work.
*968 811 F.2d at 1201. The court found the ALJ's finding was not supported by substantial evidence on the record as a whole, and wrote:
Ordinarily, where the Secretary has incorrectly allocated the burden of proof based upon an erroneous finding that the claimant can return to his prior work, we will remand for further proceedings. However, where the total record is overwhelmingly in support of the finding of disability and the claimant has demonstrated his disability by medical evidence on the record as a whole, we find no need to remand.
Gavin , 811 F.2d at 1201. In Parsons v. Heckler , 739 F.2d 1334, 1341 (8th Cir. 1984), the Court held: "Where further hearings would merely delay receipt of benefits, an order granting benefits is appropriate." In Papesh , 786 F.3d at 1135, the court wrote that an immediate finding of disability is appropriate only if the record overwhelmingly supports such a finding. The Papesh court cited Fowler , in which the court wrote: "When the record is overwhelmingly in support of a finding of disability, there is no need to remand to the Secretary for further consideration." 866 F.2d at 253 (citing Griffon v. Bowen , 856 F.2d 1150, 1154 (8th Cir. 1988) ; Gavin , 811 F.2d at 1201 ; Parsons , 739 F.2d at 1341 ). In Griffon , Judge Richard S. Arnold, writing for the court noted that Griffon's doctor concluded he was completely disabled due to a medically determinable impairment, and Griffon's complaints were corroborated by the medical evidence. Likewise, in the case at bar, the Court finds no reason to remand for any reason other than to calculate the benefits to which Plaintiff is entitled.
CONCLUSION AND DECISION
The Court has considered the evidence that supports, as well as the evidence that detracts, from the decision made by the ALJ. After applying the balancing test noted in Gavin , 811 F.2d at 1199, and cases cited therein, this Court holds that the final decision of the Commissioner is not supported by substantial evidence on the record as a whole. The case is reversed and remanded for an award of the benefits to which Plaintiff is entitled.
The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). See McDannel v. Apfel , 78 F.Supp.2d 944, 950-54 (S.D. Iowa 1999) (discussing, among other things, the relationship between the Equal Access to Justice Act and fees under 42 U.S.C. § 406(b)(1) and LR 54.A(b) );[2] see also Gisbrecht v. Barnhart , 535 U.S. 789, 122 S.Ct. 1817, 1821, 152 L.Ed.2d 996 (2002) ; Mitchell v. Barnhart , 376 F.Supp.2d 916 (S.D. Iowa 2005).
IT IS SO ORDERED.

Exhibit 2A is the State Agency initial determination found at pages 63-74 of the transcript of the administrative record before the Court. Exhibit 4A is the State agency's reconsideration determination found at pages 76-88.

N.B. Counsel is reminded that LR 54.A(b), states that an EAJA application "must specifically identify the positions taken by the government in the case that the applicant alleges were not substantially justified."