# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 05-2873

_____

| | | |
|---|---|---|
| Starla K. Tindell, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Jo Anne B. Barnhart, | * | |
| Commissioner, Social Security | * | [PUBLISHED] |
| Administration, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 12, 2006
Filed: April 19, 2006

_____

Before SMITH and HANSEN, Circuit Judges, and BOGUE,[1] District Judge.

_____

HANSEN, Circuit Judge.

Starla K. Tindell appeals the district court's[2] order affirming the denial of her claim for supplemental security income benefits. We affirm.

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

Starla Tindell filed a supplemental security income (SSI) application claiming disability due to depression, severe anxiety, migraine headaches, pain, and fibromyalgia, with an onset date of January 1, 1998. An administrative law judge (ALJ) initially denied benefits on January 25, 2002, and on May 2, 2002, the Appeals Council remanded to the ALJ for "further consideration [of Tindell's] treating source opinion," (Appellant's App. at 113), rendered by James R. Cline, who is Tindell's licensed social worker, and an explanation of the weight given to the treating source's opinion. On remand, another hearing was held on February 12, 2003, and the ALJ once again denied benefits on August 22, 2003.

Tindell was 43 at the time of her second hearing and complained of severe anxiety and panic attacks, depression, migraine headaches, back pain, and fibromyalgia. The ALJ found on remand that Tindell had impairments that prevented her from performing her prior work, but he discounted her credibility. The ALJ considered evidence from Mr. Cline, a licensed social worker who counseled Tindell on a fairly regular basis. The evidence from Mr. Cline included a questionnaire that he completed in October 2001 regarding Tindell's mental impairments. The ALJ also considered the medical opinions of Dr. Lorne Johnson, a licensed psychologist, who tested and evaluated Tindell on August 13, 2002 (after the Appeals Council remand and before the second hearing), and who had previously evaluated Tindell in 2000, prior to the first hearing. Dr. Johnson opined that Tindell had continuing problems with recurrent depression, had a panic disorder, and had a posttraumatic stress disorder. Phillip A. Ascheman, Ph.D., a clinical psychologist, testified at the second hearing as a consultant based on the medical records and the testimony provided at the second hearing, but he never personally examined Tindell. Dr. Ascheman opined that the record supported a diagnosis of some type of affective disorder and anxiety-related disorder, and he agreed with many of the limitations noted by Mr. Cline and Dr. Johnson. Dr. Ascheman disagreed with the level of some of the limitations noted by Mr. Cline and with Dr. Johnson's diagnosis of major depression and posttraumatic stress disorder.

The ALJ gave greater weight to Dr. Ascheman's opinion than to the opinions of Mr. Cline and Dr. Johnson. The ALJ determined that although Mr. Cline treated Tindell, he was not an acceptable medical source under 20 C.F.R. § 416.913(a), but could be considered as an other source under § 416.913(d). He further found that Mr. Cline's opinions were inconsistent with other substantial evidence, specifically Dr. Ascheman's testimony. Thus, Mr. Cline's opinions could be considered but were not controlling. The ALJ did not consider Dr. Johnson's opinions as controlling because Dr. Johnson was not a treating source. The ALJ found Ms. Tindell's subjective complaints to be not credible because they were inconsistent with her activities of daily living.

Based on the evidence and the weight accorded the various opinions of the psychologists and therapists involved, the ALJ determined that Tindell had a severe affective disorder, a generalized anxiety-related disorder, and a substance abuse disorder (Tindell testified at the hearing that she drank up to ten beers a night to help her sleep). From the ALJ's resulting residual functional capacity (RFC) assessment, he determined that Tindell could not perform her prior work but could do other jobs within the range of light work available in the economy as testified to by G. Brian Paprocki, a qualified vocational expert (VE). The Appeals Council affirmed the ALJ's decision, which was in turn affirmed on appeal to the district court. Tindell now appeals to this court.

We review the district court's affirmance of the Commissioner's denial of benefits de novo, "consider[ing] whether the ALJ's determination is supported by substantial evidence on the record as a whole." Vandenboom v. Barnhart, 421 F.3d 745, 749 (8th Cir. 2005) (internal marks omitted). We review the ALJ's interpretation of Social Security regulations de novo, and we give substantial deference to the Commissioner's interpretation of the Social Security Act. Reutter ex rel. Reutter v. Barnhart, 372 F.3d 946, 950 (8th Cir. 2004).

Tindell argues that the ALJ misconstrued the regulations when he refused to give treating source weight to Mr. Cline's opinion about the severity of her impairments. The parties agree that as a licensed therapist Mr. Cline is not an "acceptable medical source[]," see 20 C.F.R. § 416.913(a) (listing acceptable medical sources); § 416.913(d) (including therapists in the list of "other sources"), but they disagree about the ramifications of that fact.

Medical opinions are but one type of medical evidence used to evaluate a disability claim. The social security regulations provide a detailed explanation of how the Commissioner will evaluate opinion evidence. If a treating source's medical opinion about the nature and severity of the claimant's impairments is well-supported by medical evidence and is not inconsistent with other substantial evidence in the case, the treating source opinion is entitled to controlling weight. § 416.927(d)(2). The regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments." § 416.927(a)(2). "Treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source" who provides the claimant with medical treatment or evaluation on an ongoing basis. § 416.902. By definition then, the controlling weight afforded to a "treating source" "medical opinion" is reserved for the medical opinions of the claimant's own physician, psychologist, and other acceptable medical source. Mr. Cline was not a treating source as defined in the regulations, nor was he associated with a physician, psychologist, or other acceptable medical source that could potentially give him treating source status. See Shontos v. Barnhart, 328 F.3d 418, 426 (8th Cir. 2003) (giving treating source status to the group of medical professionals, including therapists and nurse practitioners who worked with claimant's psychologist, where the treatment center used a team approach); Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1037 (9th Cir. 2003) (noting that "the use of a team approach by medical providers [wa]s analytically significant" in Shontos's application of the treating source regulations). Thus, in considering the evidence, including

opinion evidence, from Mr. Cline as an "other source," the ALJ was not bound by the treating source regulations but had "more discretion" and was "permitted to consider any inconsistencies found within the record." Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005) (evaluating therapist's assessment as "other medical evidence" rather than as a treating source opinion).

Even though Mr. Cline's opinion was not entitled to treating source weight, his opinion was entitled to consideration as other medical evidence in the record. As for Dr. Johnson's medical opinions, his status as an evaluating source would generally entitle his opinion to greater weight than that of Dr. Ascheman, who never met with Tindell. See § 416.927(d)(1). "It is the ALJ's function to resolve conflicts among the various treating and examining physicians." Vandenboom, 421 F.3d at 749-50 (internal marks omitted). The ALJ did not discredit Mr. Cline's or Dr. Johnson's opinions in total. Dr. Ascheman, as the consulting psychologist, agreed with Mr. Cline and Dr. Johnson that Tindell suffered from some sort of depression and anxiety but disagreed that the medical record supported a diagnosis of major depression. Dr. Ascheman found the lack of symptoms noted in Mr. Cline's records inconsistent with the over-endorsement of symptoms noted by Dr. Johnson, and both inconsistent with a diagnosis of major depression. He agreed with both Mr. Cline and Dr. Johnson, however, that Tindell's depression and anxiety created moderate limitations for activities involving detailed complex situations.

Dr. Ascheman provided specific reasons for disagreeing with the level of depression found by Mr. Cline and Dr. Johnson. Dr. Ascheman concluded that Mr. Cline's diagnosis was supported by minimal symptoms, and he noted that the limitations Mr. Cline relied upon in his diagnosis for disability purposes were not included in his findings that were recorded during his therapy sessions. Further, on the mental impairment questionnaire, Mr. Cline assigned Tindell a Global Assessment of Functioning (GAF) score of 50 even though he had reported a GAF of 59 in his treatment notes from the previous day.

Dr. Ascheman took issue with Dr. Johnson's report because during Dr. Johnson's evaluation, Tindell claimed to have all of the symptoms for three different types of depression. Even Dr. Johnson recognized that the results of the MMPI-II test (a self-report inventory of symptoms) resulted in a "faking bad" profile that invalidated the test. Dr. Johnson did not think the "faking bad" profile indicated a deceptive intent by Tindell, but Dr. Ascheman disagreed, stating that the level indicated on the MMPI-II test was from an over-endorsement of symptoms, which had to be intentional. Tindell claimed to have each symptom on the test. The ALJ provided specific reasons for giving differing weight to the conflicting evidence, and he was within his authority in resolving the conflicting opinions. We recognize that generally examining source opinions should be given greater weight than that given to a psychologist who has never met the claimant and bases his opinion solely on the record. But the ALJ sufficiently explained the inconsistencies that led him to give greater weight to the consultative opinion in this case, and we agree with his assessment of the evidence from the record as a whole.

Having determined that the ALJ properly weighed the conflicting medical evidence, we must decide "whether the ALJ's determination is supported by substantial evidence on the record as a whole." Vandenboom, 421 F.3d at 749 (internal marks omitted). The ALJ considered Tindell's credibility under the factors outlined in Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984), and determined that she was not fully credible because her activities of daily living were not consistent with her alleged extremely limited residual functional capacity, which she described as "merely surviving." Tindell claimed a disability onset date of January 1, 1998. As noted by the ALJ, since that time she attended college classes in 1999 and 2000; she worked ten hours per week in a catering business; and she took care of her young grandson as recently as August 2002, just a few months before the second hearing. She took little medication considering the alleged severity of her symptoms, though we note that financing her medication was often a problem for her. We also note that the ALJ did not discredit her complaints in total and included many of her subjective

limitations in his RFC assessment. The ALJ properly considered the <u>Polaski</u> factors and supported his credibility assessment with detailed findings. He was in a better position to judge Tindell's credibility, and we find no error in his judgment. <u>See Strongson v. Barnhart</u>, 361 F.3d 1066, 1072 (8th Cir. 2004).

The ALJ determined that Tindell had an affective disorder and an anxiety disorder, which limited her RFC, such that she could not perform complex work or work requiring prolonged attention to minute detail or rapid shifts in attention. He also determined that she could tolerate only short and superficial interaction with others and could not make significant decisions or exercise significant judgment. Finally, he determined that she should avoid work that was stressful, performed at a fast pace, had quotas, or involved emergency situations. Even with these limitations, the VE determined that she could perform a variety of light, unskilled work positions.

After reviewing the evidence in the record as a whole, we believe that substantial evidence supports the ALJ's decision that Tindell is not disabled under the Social Security Act. Little evidence contradicts the ALJ's position as to the severity of Tindell's depression other than the conclusions by Mr. Cline and Dr. Johnson. Tindell has never worked full-time but has supported herself with part-time work. She seems to suffer from situational depression, as noted by Dr. Ascheman and reported in Mr. Cline's notes about her dissatisfaction with a then-recent move to subsidized housing and problems with a neighbor. Tindell has little history of medication for her depression or anxiety, which supports the ALJ's conclusions and discredits Mr. Cline's and Dr. Johnson's assessments of the effects of her depression on her ability to work. Many of Mr. Cline's notes indicated that Tindell was continuing therapy on the advice of counsel in order to document her medical problems for purposes of establishing her entitlement to disability. The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record.

The district court's judgment is affirmed.

_____