# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-1203
_____

Cindy Doreen Ponder

*Plaintiff - Appellant*

v.

Carolyn W. Colvin, Acting Commissioner, Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Pine Bluff

_____

Submitted: September 10, 2014
Filed: November 4, 2014
[Published]

_____

Before RILEY, Chief Judge, SMITH and KELLY, Circuit Judges.

_____

PER CURIAM.

Cindy Ponder appeals the district court's[1] affirmance of an Administrative Law Judge's (ALJ) denial of Ponder's application for social security disability insurance benefits. We affirm.

## I. *Background*

Ponder applied to the Social Security Administration (SSA) for disability insurance benefits on September 24, 2010, alleging that she has been disabled since January 11, 2005. She alleged total disability due to depression, anxiety, joint deterioration, and swelling in her hands and feet. She later added hypothyroidism, obesity, chronic obstructive pulmonary disease (COPD), insomnia, anemia, joint and tissue pain, fatigue, residual problems stemming from a brain surgery in 2002, and a lack of motivation. Ponder claims, among other things, that she can sit in a chair for only 30 to 45 minutes before her knees begin aching, can walk only up to a block before she needs to rest, and can stand continuously for less than one hour. Despite these limitations, Ponder performs light housework, washes dishes, cooks for her family, does laundry, shops for groceries and clothing, drives a vehicle, leaves her house alone, attends church, and visits her family.

### A. *Ponder's Medical History*

To obtain disability insurance benefits, Ponder must establish that she was disabled within the meaning of the Social Security Act ("Act") not later than the date her insured status expired—March 31, 2010. *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998) ("In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status."); *see also* 42 U.S.C. §§ 416(i) and 423(c); 20 C.F.R. § 404.131.

---

[1]The Honorable James M. Moody, United States District Judge for the Eastern District of Arkansas.

## 1. *Ponder's Medical History Before March 31, 2010*

On July 12, 2002, a surgeon removed a cyst from Ponder's brain. The procedure went well, and the surgeon predicted that Ponder would do "very well from this in the long run." Ponder soon reported significant improvement in neurological function, and her surgeon consequently released her from his care. Ponder thereafter returned to work in a rice mill from 2003 to 2005 and never returned to the surgeon for any follow-up care.

In coming years Ponder obtained routine checkups and other examinations from her primary care physician, Dennis Yelvington, M.D. On October 22, 2009, for instance, Ponder visited Dr. Yelvington to obtain a "yearly physical." During the visit Dr. Yelvington noted that Ponder may have "degenerative joint disease and osteoarthritis" in her knees, but he also noted that her back, neck, extremities, and neurological functions were otherwise normal. Ponder left "ambulatory in no acute distress," and Dr. Yelvington did not issue her any work restrictions.

Similarly, on November 9, 2009, Ponder visited Stuttgart Medical Clinic and complained of only "sinus congestion/infection." Ponder again "left ambulatory in no acute distress," and again without any work restrictions.

On March 13, 2010—less then three weeks before her insured status expired—Ponder again visited Stuttgart Medical Clinic and complained of "sinus congestion/cough." As with prior visits, Ponder voiced no complaints about her musculoskeletal system, neurological systems, or psychological condition. Her treating physician did not issue Ponder any work restrictions and noted that Ponder's back, neck, and extremities again appeared normal.

## 2. *Ponder's Medical History After March 31, 2010*

On July 1, 2010, Dr. Yelvington evaluated Ponder and noted certain degenerative "changes," although he did not specify what those changes were. Ponder

returned on September 13, 2010, and complained to Dr. Yelvington of joint pain, indigestion, and shortness of breath. Dr. Yelvington ordered an x-ray of Ponder's chest and, on September 23, 2010, found "some scarring in [Ponder's] left lung" and "significant degenerative disc disease." Notwithstanding these findings, Dr. Yelvington again issued no work restrictions, and Ponder once again "left ambulatory in no acute distress."

On January 13, 2011, James Abraham, III, M.D., provided Ponder with a rheumatology consultation. Dr. Abraham noted that Ponder had full range of motion in her wrists, shoulders, hips, and knees. He also noted that her spine, ankles, and feet had no deformities. Dr. Abraham opined that Ponder may have sleep apnea and fibromyalgia. He recommended, among other things, 30 to 40 minutes of aerobic exercise three to four times per week. He also recommended Ponder undergo a sleep study, but Ponder was reluctant to submit to it.

On February 22, 2011, Robert Searcy, M.D., performed a pulmonary consultation and ordered two x-rays of Ponder's chest. Those x-rays indicated that Ponder may have sarcoidosis.

On March 16, 2011, state agency physician Judith Forte, M.D., completed a Physical Residual Functional Capacity Assessment and opined that Ponder could occasionally lift ten pounds and frequently lift less than ten pounds; could stand and/or walk for at least two hours in an eight-hour workday; and could sit for about six hours in an eight-hour workday. Dr. Forte opined that, even giving Ponder "the benefit of the doubt" and assuming Ponder was morbidly obese, had osteoarthritis in her right knee, and suffered from degenerative disc disease before March 31, 2010, Ponder could nevertheless perform sedentary work as of that date.

On April 5, 2011, David G. Davila, M.D., consulted with Ponder regarding her lack of sleep. Ponder denied having chronic back pain, rheumatoid arthritis,

-4-

osteoarthritis, and degenerative disc disease. In fact, Ponder's "chief complaint" was "snoring." Dr. Davila recommended a sleep test and continuous positive airway pressure (CPAP) therapy. The CPAP therapy ultimately improved both the quality and quantity of Ponder's sleep. Similarly, Ponder reported on August 5, 2011, that she did not regularly need to use an albuterol inhaler, and that Advair controlled her cough, wheezing, and shortness of breath.[2]

On November 22, 2011—approximately 20 months after Ponder's insured status expired—Dr. Yelvington completed a Physical Residual Functional Capacity Questionnaire for Ponder. Dr. Yelvington indicated on the form that Ponder's diagnoses included COPD, sarcoidosis, and osteoarthritis, and that Ponder's symptoms included light headedness, dyspnea, chronic fatigue, chronic pain, and insomnia. He separately listed "fibromyalgia" under "clinical findings and objective signs." He opined that "emotional factors" did not contribute to Ponder's symptoms and functional limitations, yet he also opined that Ponder could perform only "low stress" jobs. Dr. Yelvington estimated that Ponder could walk only up to one city block before resting, could neither stand nor sit for more than 30 minutes at a time, and could sit, stand, or walk for less than two hours in an eight-hour workday. He also opined that, if Ponder attempted employment, she would need to take up to two 15-minute breaks per day and miss as many as four workdays per month. Dr. Yelvington further indicated that Ponder could never lift 20 pounds or more. Dr. Yelvington estimated that Ponder's "limitations were [that] severe as of no later than January 2009."

B. *The ALJ's Hearing and Decision*

At Ponder's request, an ALJ conducted a hearing on December 6, 2011, to address Ponder's application. Ponder, her husband, and her attorney attended the hearing, and both Ponder and her husband testified about Ponder's limitations and

---

[2]It is unclear exactly when Ponder began using Advair or an albuterol inhaler.

conditions. The ALJ also called two consultative physicians as medical experts to add their views following their review of Ponder's medical record.

The first medical expert, Charles Murphy, M.D., testified that he reviewed Ponder's medical records, noted her diagnoses, and heard both Ponder's and her husband's testimony before the ALJ. Dr. Murphy opined that, notwithstanding Ponder's extreme obesity and knee arthritis (which were documented before March 2010), Ponder could nevertheless perform a "sedentary level of exertion" as of March 31, 2010. Dr. Murphy also noted that Ponder received adequate treatment for her thyroid and sleep apnea. The second physician, Alvin Smith, M.D., likewise testified that he reviewed Ponder's mental health records and found nothing that would preclude her from performing "detailed, semi-skilled" work.

A vocational expert (VE) also testified at the hearing after listening to the testimonies of Ponder, her husband, and the medical experts. The VE testified that a hypothetical person of Ponder's age, education, and work experience who could perform only unskilled sedentary work could do "basically the full range of unskilled sedentary work," which included 120,000 jobs regionally and 1.2 million jobs nationwide.

The ALJ ultimately concluded that Ponder indeed has severe impairments ("[s]arcoidosis, [COPD], anemia, morbid obesity, thyroid replacement, and status post brain surgery"), but that she could nevertheless perform sedentary work as of March 31, 2010. The ALJ denied Ponder's application for disability insurance benefits.

## C. *Procedural History*

Ponder appealed to the SSA's Appeals Council to reverse the ALJ's decision. The Appeals Council concluded, however, that there was no "basis for changing the [ALJ's] decision," at which time the ALJ's decision became the SSA Commissioner's final decision.

Ponder subsequently sought review of the ALJ's denial of benefits in the district court. The district court affirmed, finding that substantial evidence on the record as a whole supports the ALJ's decision.

## II. *Discussion*

We review de novo the district court's decision upholding the denial of social security benefits. *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006). In reviewing the district court's decision, we analyze whether the Commissioner's determination is supported by substantial evidence on the record as a whole. *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010)). In evaluating whether such substantial evidence exists, we "'consider the evidence that supports the Commissioner's decision as well as the evidence that detracts from it.'" *Id.* (quoting *Kluesner*, 607 F.3d at 536). We must affirm the Commissioner's denial of benefits if, after reviewing the record, "'we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings.'" *Id.* (quoting *Kluesner*, 607 F.3d at 536).

Ponder will not qualify for benefits under the Act unless her impairments were "of such severity that [she was] not only unable to do [her] previous work but [could not], considering [her] age, education, and work experience, engage *in any other kind* of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (emphasis added). Thus, if Ponder could perform sedentary work as of March 31, 2010, she is not entitled to disability insurance benefits. *See id*. The applicable regulations define sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves

sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a).

On appeal, Ponder argues primarily that the ALJ lacked substantial evidence to conclude that Ponder could perform sedentary work as of March 31, 2010. We disagree.

Although a treating physician's opinion is often given "controlling weight," such deference is not appropriate when the opinion is "inconsistent with the other substantial evidence." *Renstrom v. Astrue*, 680 F.3d 1057, 1064 (8th Cir. 2012) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)). The record as a whole in this case, including the "inconsistencies in the evidence," Ponder's "daily activities," and the "effectiveness [of her] medication," *see Polaski v. Heckler*, 739 F.2d 1320, 1321–22 (8th Cir. 1984), casts significant doubt on both Ponder's and Dr. Yelvington's after-the-fact assertions that Ponder could not perform sedentary work during her coverage period.

To begin with, Ponder was evaluated several times in the months leading up to March 31, 2010—including once on March 13, 2010—but she did not report the conditions and symptoms that she now claims rendered her totally disabled. In fact, Ponder voiced no concern whatsoever during those visits about her musculoskeletal system, neurological systems, or psychological state, although she *did* complain of relatively minor symptoms and conditions, including "sinus infection," "congestion," and "coughing." Her medical records likewise reflect no complaints, for instance, of any disabling problems associated with sitting, standing, or walking; instead, Ponder was "ambulatory" and "in no acute distress."

It was not until after, and in some instances long after, March 31, 2010, that many of Ponder's claimed disabling conditions and symptoms appear in the medical record. Ponder was not diagnosed with fibromyalgia until January 2011, not diagnosed with COPD until February 2011, and not diagnosed with sarcoidosis until April 2011—approximately a year after her insured status expired. Moreover, Ponder specifically denied having chronic back pain, rheumatoid arthritis, osteoarthritis, and degenerative disc disease at least as late as April 2011, at which time her "chief complaint" was actually "snoring."

Three physicians who reviewed Ponder's medical record independently disagreed with Dr. Yelvington's assessment and concluded that Ponder could, in fact, perform sedentary work as of March 31, 2010. Dr. Forte, for instance, analyzed Ponder's records and concluded that Ponder could occasionally lift ten pounds and frequently lift less than ten pounds; could stand and/or walk for at least two hours in an eight-hour workday; and could sit for about six hours in an eight-hour workday. Dr. Forte further opined that Ponder could perform sedentary work, notwithstanding Ponder's morbid obesity, osteoarthritis, and degenerative disc disease. Dr. Murphy and Dr. Smith also independently examined Ponder's records (including Dr. Yelvington's contemporaneous treatment notes), heard her testimony, and likewise concluded that Ponder could perform at least sedentary work as of March 31, 2010.

Neither Dr. Yelvington nor any other physician issued Ponder any work restrictions during the relevant time period. This fact further bolsters the consultative physicians' analyses and undermines Dr. Yelvington's assessment. *See Fischer v. Barnhart*, 56 F. App'x 746, 748 (8th Cir. 2003) (per curiam) ("in discounting [the treating physician's] opinion, the ALJ properly noted that . . . [the treating physician] had never recommended any work restrictions for [the claimant]"). On this record, Dr. Yelvington's assessment, while accorded due weight, cannot trump these independent medical opinions and the significant evidence supporting them solely because he was Ponder's primary care physician. *See, e.g.*, *Howe v. Astrue*, 499 F.3d 835, 840–41 (8th

-9-

Cir. 2007) (finding that an ALJ properly discounted a treating physician's opinion when the opinion conflicted with the record as a whole, including other physicians' opinions); SSR 96-6P, 1996 WL 374180, at *3 ("[O]pinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Furthermore, treatment has controlled several of Ponder's impairments: CPAP therapy has controlled the symptoms associated with her sleep apnea; medication has kept her thyroid levels adequate; and Advair has controlled her coughing, wheezing, and shortness of breath. Thus, even assuming Ponder had these impairments back in March 2010, the impairments would "not [be] considered disabling" under the Act. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("An impairment which can be controlled by treatment or medication is not considered disabling.").

Finally, Ponder's activity level undermines her assertion of total disability. Indeed, Ponder admitted that she, among other things, performs light housework, washes dishes, cooks for her family, does laundry, can handle money and pays bills, shops for groceries and clothing, watches television, drives a vehicle, leaves her house alone, regularly attends church, and visits her family. Of course, there are cases in which a claimant's ability to engage in certain personal activities "does not constitute substantial evidence that he or she has the functional capacity to engage in substantial gainful activity." *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (finding that "staying around the house" and "watching T.V." do not constitute substantial evidence that the claimant could work); *see also Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) (a claimant's ability to engage in "personal activities such as cooking, cleaning, and hobbies" does not per se constitute substantial evidence that the claimant could work). But that is not the case here given both the extent of Ponder's daily activities and the independent medical evidence that she was not totally disabled as of March 31, 2010. *See, e.g.*, *Roberson v. Astrue*, 481 F.3d

1020, 1025 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities," including taking care of her child, driving a vehicle, preparing meals, performing housework, shopping for groceries, handling money, and visiting family); *Wagner v. Astrue*, 499 F.3d 842, 852 (8th Cir. 2007) (holding that substantial evidence supported ALJ's denial of disability benefits in part because claimant "engaged in extensive daily activities, such as fixing meals, doing housework, shopping for groceries, and visiting friends").

In sum, we hold that substantial evidence on the record as a whole—including contemporaneous treatment notes, independent medical opinions, and Ponder's own behavior—supports the ALJ's and the district court's determinations that Ponder could perform sedentary work as of March 31, 2010.

## III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____