# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-3337
_____

Amber L. Kraus

*Plaintiff - Appellant*

v.

Andrew Saul, Commissioner of Social Security Administration

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Nebraska - Lincoln

_____

Submitted: November 17, 2020
Filed: February 19, 2021

_____

Before BENTON, ERICKSON, and GRASZ, Circuit Judges.

_____

BENTON, Circuit Judge.

The Commissioner of Social Security Administration denied Amber L. Kraus's applications for disability insurance benefits and supplemental security income. She sued the Commissioner, asserting that the denial was contrary to law

and not supported by substantial evidence. The district court[1] affirmed the denial of benefits. Kraus appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Kraus applied for disability insurance benefits and supplemental security income in 2014. She alleged disability due to bipolar disorder, depression, anxiety, a bad back, asthma, impulse control disorder, panic attacks, and arthritis. The Commissioner denied her application initially and on reconsideration, at steps four and five.[2]

Kraus requested a hearing before an administrative law judge. She testified she was unable to work due to her respiratory issues and mental health disorders.

_____

[1] The Honorable Susan M. Bazis, United States Magistrate Judge for the District of Nebraska.

[2] A five-step process determines whether a claimant is disabled:

At the first step, the claimant must establish that he has not engaged in substantial gainful activity. The second step requires that the claimant prove he has a severe impairment that significantly limits his physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that his impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove he lacks the RFC to perform his past relevant work. Finally, if the claimant establishes that he cannot perform his past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (citations omitted).

She testified she was on numerous medications, including a nebulizer treatment every three to four hours. She also testified to her limited work history and inability to hold regular employment in the past.

The ALJ formulated a residual functional capacity (RFC). *See* **20 C.F.R. § 416.920**. The RFC described what Kraus "is able to do despite limitations caused by all of [her] impairments." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (alteration added), *citing* **20 C.F.R. § 404.1545(a)**. After "careful consideration of the entire record," the ALJ determined:

> [Kraus] has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except she is able to perform work away from fumes, odors, astringents, and other types of items commonly associated with someone who has a breathing problem. She is capable of performing simple work due to some problem with maintaining attention and concentration for extended periods needed for more complex work. The claimant is able to understand and follow simple instructions and is able to get along with supervisors, peers, and the general public as she has worked at those types of positions in the past. The claimant is able to make simple work related decisions and adjustments to changes in the work setting. Finally, the claimant is able to perform work away from concentrated cold and heat.

Formulating the RFC, the ALJ gave "little weight" to the conclusions of Kraus's treating physicians, Drs. Walter J. Duffy and Kirk A. Kinberg. Dr. Duffy treated her mental health concerns for 15 years. He opined that she is unable to work due to her mental health impairments. Dr. Kinberg specializes in asthma, allergy, and immunology, and has treated her since 2012. He opined that she is unable to work due to her asthma. Discounting the opinions, the ALJ stated that both were vague and imprecise and did not provide any function-by-function analysis.

The ALJ also considered opinions of Kraus's health and ability to work from state agency medical (physical and psychological) consultants. The ALJ gave "some weight" to the physical consultants' opinions that Kraus "could perform work at all

exertional levels." The ALJ gave "great weight" to the psychological consultants' opinions that Kraus "would have no more than moderate limitations in all functional areas."

The ALJ addressed the availability of jobs for Kraus, given her RFC. Vocational expert Holly Berquist Neal testified at the hearing. The ALJ asked two hypothetical questions. First, the ALJ asked about a hypothetical person the same age, education, and past work history as Kraus, who could lift up to 20 pounds on occasion and 10 pounds on a frequent basis, and sit for six hours or stand for six hours in an eight-hour workday, in a workplace without fumes, odors, astringents, or other items commonly associated with individuals with breathing problems. That person could understand and follow simple instructions, get along with others, adjust to changes in the work setting, and make simple work-related decisions. The person needed to avoid concentrated heat or cold. Neal stated that such a person could work as a cashier, router, or counter clerk.

The second hypothetical added to the first that the person needed to take a 15- to 25-minute break for nebulizer breathing treatments at undisclosed times one to three times per week. Neal stated there was no competitive employment for such a person. Considering Neal's responses, the ALJ determined that given her RFC, there were jobs available to Kraus in the national economy.

The ALJ found that Kraus was not disabled and denied her applications for benefits. The ALJ emphasized that the record did not support Kraus's allegations about the intensity and limiting effects of her symptoms, or the treating physicians' conclusions that she is unable to work.

The Appeals Council denied Kraus's request for review, making the ALJ's decision the final decision of the Commissioner. She sought judicial review under 42 U.S.C. § 405(g). The district court affirmed the denial of benefits. Kraus appeals.

## II.

This court reviews de novo a district court's decision affirming the denial of social security benefits. ***Tindell v. Barnhart***, 444 F.3d 1002, 1004 (8th Cir. 2006). This court affirms "if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." ***Blackburn v. Colvin***, 761 F.3d 853, 858 (8th Cir. 2014). *See **Biestek v. Berryhill***, 139 S. Ct. 1148, 1154 (2019).

Substantial evidence "is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." ***Phillips v. Astrue***, 671 F.3d 699, 702 (8th Cir. 2012) (citation omitted). This Court "will disturb the ALJ's decision only if it falls outside the available zone of choice." ***Hacker v. Barnhart***, 459 F.3d 934, 936 (8th Cir. 2006) (internal quotations omitted) (citation omitted). An ALJ's decision is "not outside the zone of choice" simply because this Court "might have reached a different conclusion had we been the initial finder of fact." ***Bradley v. Astrue***, 528 F.3d 1113, 1115 (8th Cir. 2008) (internal quotations omitted) (citation omitted).

## A.

The ALJ formulated Kraus's RFC to determine whether she qualified for disability benefits. *See **Papesh v. Colvin***, 786 F.3d 1126, 1131 (8th Cir. 2015). Her RFC must be "based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." ***Id.*** (alteration in original), *quoting **Baldwin v. Barnhart***, 349 F.3d 549, 556 (8th Cir. 2003). Kraus has the burden to prove her RFC. ***Id.***

Kraus contends that in formulating her RFC, the ALJ erred by improperly weighing the various physicians' opinions. She first argues there is not substantial evidence for the ALJ's decision to give "little weight" to her treating physicians' opinions (both concluded she was unable to work). Second, she asserts there is not

substantial evidence for the ALJ's decision to give "some weight" to the physical consultants' opinions that she could perform work at all exertional levels, and "great weight" to the psychological consultants' opinions that she has no more than moderate limitations in all functional areas.

1.

According to Kraus, her treating physicians' opinions were entitled to controlling weight in formulating her RFC. Treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone . . . ." *Id.* at 1132 (alteration added), *quoting* **20 C.F.R. § 404.1527(c)(2)**. Generally, considering a claim for disability benefits, an ALJ "must give 'controlling weight' to a treating physician's opinion if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.' " *Id.*, *quoting* ***Wagner v. Astrue***, 499 F.3d 842, 848 (8th Cir. 2007). *See* **§ 404.1527(c)(2)**.

An ALJ need not give controlling weight to treating physicians' opinions in all instances. An ALJ may give "limited weight" if they "provide[] conclusory statements only, or [are] inconsistent with the record." ***Papesh***, 786 F.3d at 1132 (alterations added) (citation omitted). An ALJ may "discount or even disregard the opinion . . . where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* (citation omitted). *See* ***Stormo v. Barnhart***, 377 F.3d 801, 806 (8th Cir. 2004) (stating that "treating physicians' opinions are not medical opinions that should be credited when they simply state that a claimant can not be gainfully employed, because they are merely opinions on the application of the statute, a task assigned solely to the discretion of the [Commissioner].") (alteration in original) (internal quotations omitted) (citation omitted); ***Davidson v. Astrue***, 578 F.3d 838, 844 (8th Cir. 2009) (same). Generally,

-6-

though, "[e]ven if the [treating physician's] opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Papesh*, 786 F.3d at 1132 (first alteration added) (citation omitted).

Substantial evidence supports the ALJ's decision to give "little weight" to Dr. Duffy's opinion. The opinion is an unsupported conclusion on Kraus's inability to work. *See Davidson*, 578 F.3d at 844 (stating that a physician's "conclusory opinion on the ultimate determination of disability" that had no "supporting objective evidence" did not "compel a finding of disability"); *Stormo*, 377 F.3d at 806 (same). Dr. Duffy checked boxes indicating Kraus could not work, but gave no explanation and proffered no evidence for his conclusion. Further, his treatment notes do not support his conclusion, noting continued improvement in her memory, concentration, sleep, mood, and physical health. *See Davidson*, 578 F.3d at 843 (stating that "[i]t is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes.") (citation omitted). The ALJ's decision was proper.

Substantial evidence also supports the ALJ's decision to give "little weight" to Dr. Kinberg's opinion that Kraus is unable to work on a regular basis. While noting her various symptoms and medical treatments,[3] he did not explain how they left her unable to work on a regular basis. *See id.* at 844; *Stormo*, 377 F.3d at 806 (same). His treatment notes also do not support his conclusion that she is unable to work and are inconsistent with his conclusion. For example, he noted that with her medications, she had "fairly good control" of her asthma and was seeing improvement with her shortness of breath and wheezing. The ALJ's decision here was also proper.

The ALJ did not completely disregard the treating physicians' opinions and treatment notes. *See Papesh*, 786 F.3d at 1132. Rather, the ALJ reviewed all the

---

[3]Dr. Kinberg stated that Kraus has a history of asthma and that her symptoms led to tightness in her chest, shortness of breath, coughing, and wheezing (despite taking medications). He stated these symptoms occurred daily.

materials for a holistic view of Kraus's health. The ALJ incorporated the doctors' various tests and analyses into a determination of her RFC. The ALJ appropriately disregarded the unsupported conclusory elements. *See Stormo*, 377 F.3d at 806.

2.

Kraus argues that in formulating her RFC, the ALJ improperly relied on medical consultants' opinions. She asserts that the ALJ erred by giving greater weight to these opinions than to her treating physicians' opinions, because the consultants never treated her and gave opinions only by reviewing medical records.

Generally, treating physicians' opinions "should be given greater weight" than opinions from consultants "who ha[ve] never met the claimant and base[] [their] opinion[s] solely on the record." *Tindell*, 444 F.3d at 1006 (alterations added). But in some instances, "[o]pinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." *Ponder v. Colvin*, 770 F.3d 1190, 1195 (8th Cir. 2014) (alterations added), *quoting* **Social Security Ruling 96-6P**, 1996 WL 374180, at *3 (S.S.A. July 2, 1996). An ALJ may rely on non-treating physician opinions where the ALJ "sufficiently explain[s] the inconsistencies" in the treating physicians' opinions that led the ALJ to "give greater weight to the consultative opinion . . . ." *Tindell*, 444 F.3d at 1006 (alteration added). *See Piepgras v. Chater*, 76 F.3d 233, 236 (8th Cir. 1996) (stating that a "treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements.").

Substantial evidence supports the ALJ's decision to give greater weight to the medical consultants' opinions than to the treating physicians' opinions. The physical consultants independently reviewed Kraus's medical records and concluded she could perform work at all exertional levels. The ALJ gave this conclusion "some weight" because the physical consultants are "acceptable medical sources" and they "have knowledge of the program." (The ALJ did not give "great weight" because it

-8-

independently determined, based on the record as a whole, that the severity of Kraus's asthma left her capable of only "performing light work activity.") The psychological consultants determined that Kraus would have no more than moderate limitations in all functional areas. The ALJ gave this conclusion "great weight" because the psychological consultants are "acceptable medical sources, their opinions [were] consistent with the record as a whole, and they have knowledge of the program."

The ALJ emphasized that the consultants are "highly qualified physicians" and are "experts in the evaluation of the medical issues in disability claims under the Social Security Act," citing *Social Security Ruling 96-6P*, 1996 WL 374180, at \*2. *See Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014). The ALJ also recognized that the treating physicians' opinions were conclusory with little evidentiary support. *See Piepgras*, 76 F.3d at 236. The ALJ's decision was appropriate and sufficiently explained. *See Tindell*, 444 F.3d at 1006.

## B.

According to Kraus, there is not substantial evidence for the ALJ's determination that there are jobs available in the national economy that she can perform. She asserts that the ALJ erred by relying on Neal's response to a hypothetical question that did not encapsulate her limitations and ignored Neal's response to a second hypothetical that reflected them.

An ALJ may rely on a vocational expert's response to a "properly formulated hypothetical question to meet her burden of showing that jobs exist in significant numbers which a person with the claimant's residual functional capacity can perform." *Sultan v. Barnhart*, 368 F.3d 857, 864 (8th Cir. 2004). A vocational expert's testimony "based on a properly phrased hypothetical question constitutes substantial evidence." *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999), *quoting Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996).

A hypothetical question "is sufficient if it sets forth the impairments which are accepted as true by the ALJ." *Id.* (citation omitted). *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (stating that a hypothetical is "properly framed" and may be relied on where it is "based upon the ALJ's determination of [the claimant's] residual functional capacity which is supported by the record") (alteration added); *Hunt v. Massanari*, 250 F.3d 622, 626 (8th Cir. 2001) (stating that a vocational expert's testimony is not substantial evidence where the "hypothetical question does not encompass all relevant impairments") (citation omitted). A hypothetical is not insufficient because it does not include all the health limitations *alleged* by the claimant. *Haggard*, 175 F.3d at 595 (rejecting a claimant's argument that a hypothetical question must include the full extent of their alleged impairments).

In the first hypothetical, the ALJ asked Neal whether a hypothetical person—who could lift amounts that Kraus could, sit and stand for periods that Kraus could, and work in a workplace devoid of fumes that irritated Kraus—could work. The hypothetical did not include any nebulizer treatment, because it was not supported by the record as a whole. Neal answered that the hypothetical person could work as a cashier, router, or counter clerk.

Neal's testimony is substantial evidence because it is a response to a hypothetical with the impairments accepted as true by the ALJ and reflected in the RFC. *See id.*; *Cox*, 471 F.3d at 907. Kraus's RFC was based on substantial evidence because it was supported by the treating physicians' notes, the consultants' analyses, and various medical tests cited by the ALJ. The ALJ properly relied on Neal's answer to the first hypothetical.

In the second hypothetical, the ALJ asked Neal whether a hypothetical person with the impairments Kraus *alleged* could work. The ALJ added to the first hypothetical that the hypothetical person needed to take breaks one to three times a

week for breathing treatments.[4]  Neal concluded that, with this added impairment, the hypothetical person would not be able to find work.

Neal's answer was not substantial evidence, as the hypothetical person in the second hypothetical did not have the same RFC as Kraus.  *See **Haggard***, 175 F.3d at 595; ***Cox***, 471 F.3d at 907.  Kraus's alleged limitations were not supported by the record.  The ALJ was not required to give deference to Neal's answer.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

---

[4]Kraus argues that the ALJ erred by asking the vocational expert whether the hypothetical individual could work, given breaks one to three times *per week* for breathing treatments.  Kraus testified she requires breathing treatments three to four times *per day*.  The ALJ was not required to shape the hypothetical to Kraus's specific allegations, which did not reflect the ALJ's RFC determination.  *See **Haggard***, 175 F.3d at 595.