# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-3126
_____

Kevin Ross

*Plaintiff - Appellant*

v.

Martin O'Malley, Commissioner of the Social Security Administration[1]

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Northern
_____

Submitted: September 22, 2023
Filed: February 13, 2024
_____

Before SMITH, Chief Judge, MELLOY and ERICKSON, Circuit Judges.
_____

SMITH, Chief Judge.

---

[1]On December 20, 2023, Martin O'Malley became the Commissioner of the Social Security Administration and is substituted for Kilolo Kijakazi as defendant in this action. *See* Fed. R. App. P. 43(C)(2).

Kevin Ross appeals the district court's[2] decision affirming the denial of his claim for disability insurance benefits. Because substantial evidence on the record supports the administrative law judge's (ALJ) decision, we affirm.

## I. *Background*

On January 2, 2019, Ross protectively filed an application for disability insurance benefits due to, *inter alia*, deep vein thrombosis in the left hip, a cervical spine disc replacement, and a bulging disc in the lumbar spine. Based on these ailments' effects on Ross's head, neck, and lower back, he contends that he is incapable of working in the national economy. His application for benefits asserts an onset date of December 10, 2018.

The Social Security Administration (SSA) denied Ross's claim initially and on review. At Ross's request, an ALJ held a hearing on October 6, 2020, where he appeared with counsel. At the hearing, the ALJ heard testimony from Ross and a vocational expert. The ALJ issued his decision on November 13, 2020, finding that Ross was not disabled and could work as a document preparer and surveillance system monitor. The Appeals Council denied Ross's request for review on July 27, 2021, making the ALJ's decision the final decision of the Commissioner of the SSA. Ross then sought judicial review of the ALJ's decision in the district court. *See* 42 U.S.C. § 405(g). The district court affirmed the ALJ's decision, and Ross appeals.

## II. *Discussion*

We review de novo a district court's decision affirming a denial of social security disability benefits. *Kraus v. Saul*, 988 F.3d 1019, 1023 (8th Cir. 2021). "We consider both evidence that detracts from the decision and evidence that supports it." *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011). This court will affirm the decision "if the ALJ made no legal error and the ALJ's decision is supported by

---

[2]The Honorable Edie R. Ervin, United States Magistrate Judge for the Eastern District of Arkansas, sitting by consent of the parties pursuant to 28 U.S.C. § 636(c).

substantial evidence on the record as a whole." *Kraus*, 988 F.3d at 1024 (internal quotation marks omitted).

The standard for substantial evidence is not high. Substantial evidence requires the record to contain "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). We will only disturb the ALJ's decision "if it falls outside the available zone of choice." *Kraus*, 988 F.3d at 1024 (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)). A decision is not outside of the zone of choice because this court might have reached a different conclusion if we were the initial factfinder. *Id.* "If the record supports two inconsistent conclusions, this court must affirm the Commissioner's choice among those two conclusions." *Bagwell v. Comm'r, Soc. Sec. Admin.*, 916 F.3d 1117, 1119 (8th Cir. 2019). Applying this standard of review, we affirm the district court.

A. *Neck and Back Limitations*

Ross first asserts that the ALJ overlooked Ross's inability to move his neck up and down. The record supports contradictory findings about the extent of Ross's neck movement. Ross does have decreased cervical rotation in his head and neck, he experiences pain when rotating his neck, the area is mildly tender, and he has radiculopathy affecting the area. However, the record also shows that when he went to the emergency room for chronic neck pain in February 2019, the emergency room physician did not find point tenderness or spinal step-offs. Later, when he went to the emergency room for chest pain in June 2019, another physician indicated that he had full range of neck motion. The record also contains a compromised February 2019 MRI[3] in which Ross's neck appears normal and an October 2019 X-ray of his

---

[3]Medical hardware from previous cervical fusions compromised the MRI. Although the MRI was unclear in spots, the reviewing personnel could still discern that "[t]he lower cervical spine appears normal" and that there were "[n]o abnormal signals . . . in the visualized spinal cord." R. Doc. 12-8, at 46. When Dr. Robert Abraham, Ross's neurosurgeon, reviewed the MRI, he could read the images and

cervical spine in which the examiner found "[s]table postoperative change with no acute findings." R. Doc. 12-8, at 112 (emphasis omitted).

The evidence may support a finding that Ross's limited head and neck movement prevents him from working in the national economy, but the evidence also supports the contrary finding that he can perform the jobs of a document preparer and surveillance system monitor. Because the record supports two inconsistent conclusions, both of which are in the available zone of choice, the ALJ did not err in his determination.

Next, Ross argues that substantial evidence does not support the ALJ's decision regarding his back limitations. The ALJ cited evidence showing a disc protrusion at L5-S1, mild neuroforaminal stenosis, degenerative lumbar disease, restrictive lumbar range, narrowing around Ross's foraminal, and tenderness in his lumbar spine. However, the ALJ also cited evidence showing a painless range of motion in Ross's back, as well as no disc herniation, spinal stenosis,[4] foraminal stenosis,[5] or muscle spasms. Although the evidence may support a finding that Ross's back injuries preclude him from working in the national economy, the evidence also supports the ALJ's contrary finding. Because the evidence supports

_____

found that the "films of the cervical spine revealed the hardware to be in good position with an adequate spinal canal." *Id.* at 104. Thus, although the MRI was compromised, it was clear enough for Dr. Abraham to read and determine that another MRI was not necessary.

[4]Spinal Stenosis is a narrowing of the spinal canal through which the spinal cord runs. *Spinal Stenosis*, Johns Hopkins Med., https://www.hopkinsmedicine.org /health/conditions-and-diseases/spinal-stenosis [https://perma.cc/GN9R-CN3G].

[5]Foraminal Stenosis is a narrowing of smaller canal openings along the spine that provide space for spinal nerves to deviate from the spinal cord and into other areas of the body. *Foraminal Stenosis*, Cedars Sinai, https://www.cedars-sinai.org/health-library/diseases-and-conditions/f/foraminal-stenosis.html [https://perma.cc/8TED-LBU2].

two inconsistent conclusions, and both conclusions are in the zone of choice, we cannot reverse the ALJ's determination.

Therefore, we affirm the district court because the ALJ had substantial evidence for his decision.

## B. *Ross's Credibility Assessment*

Ross argues that the ALJ improperly discredited his testimony regarding the severity of his symptoms.

"To assess [a claimant's] credibility, the ALJ [must] consider all of the evidence, including prior work records and observations by third parties and doctors regarding daily activities, the duration, frequency, and intensity of pain, precipitating and aggravating factors, the dosage, effectiveness, and side effects of medication, and functional restrictions." *Lowe v. Apfel*, 226 F.3d 969, 971–72 (8th Cir. 2000) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)). An ALJ is not required to "explicitly discuss each factor, and we will defer to credibility determinations that are supported by good reasons and substantial evidence." *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) (citation omitted). "An ALJ may decline to credit a claimant's subjective complaints if the evidence as a whole is inconsistent with the claimant's testimony." *Id.* (internal quotation marks omitted)). Moreover, an ALJ may rely "upon discrepancies between [a claimant's] allegations of pain and h[is] treatment history, medicinal selections, and daily activities in disregarding h[is] subjective complaints." *Davis v. Apfel*, 239 F.3d 962, 968 (8th Cir. 2001).

*Schwandt* guides our analysis. In *Schwandt*, we upheld the ALJ's determination that the claimant's subjective testimony was not credible because the medical record undermined her account of having a knee disability. 926 F.3d at 1012. There, the record showed that she had "normal motor strength in her upper and lower extremities," her pain fluctuated between high and low levels, and her knee had full extension, normal range of motion, and stability. *Id.* "Viewing the

record as a whole, [we held that] good reasons and substantial evidence support[ed] the ALJ's decision to discount [the claimant's] credibility." *Id.*

In Ross's case, as in *Schwandt*, medical evidence on the record supports the ALJ's decision to discount his testimony. The ALJ relied on MRIs from July 2014 and September 2015, a neurosurgeon's February 2019 exam, a compromised MRI from February 2019, and an MRI report from July 2019 to support his finding that Ross did not have a spinal disability excluding him from all jobs in the national economy. In deciding that Ross did not have qualifying edema, the ALJ acknowledged that edema was found in a January 2019 exam but noted that edema was not found when Ross visited the emergency room in June 2019. Finally, regarding Ross's claims that he has peripheral neuropathy, difficulty getting up from a seated position, imbalance while standing or walking, and struggles to use his upper extremities, the ALJ cited an exam by Ross's neurosurgeon that found his motor and sensory functions intact.

In addition, discrepancies in Ross's testimony and his function reports further support the ALJ's credibility determination. Ross testified that he cannot bend or lift because of his back and that his neck problem limits his ability to look up, down, and around. These impairments, he testified, require him to change seating positions every 30 minutes and limits his ability to walk or stand for more than 30 minutes. His function reports list sleeping, dressing, bathing, and shaving as problematic. The same reports note that he helps with cooking and makes small repairs around the house. Ross credits his ability to take breaks as the reason he can perform those activities. The record also shows that he can drive short distances,[6] shops in stores once a month, fishes from the bank of a pond, and that the summer before his

---

[6]During the ALJ hearing, Ross stated that he no longer has a driver's license. But in his function reports in February and October 2019, he indicated that he drives a car. During oral argument, his counsel also indicated that Ross could drive short distances. The record is unclear regarding why Ross no longer has a driver's license or when he stopped operating a motor vehicle.

disability hearing he helped his friend's business by operating a riding mower for a couple of hours with breaks every 20 to 30 minutes.

Ross's testimony of performing small repairs, brief work riding a lawn mower, and driving short distances, combined with his monthly trips to stores and his ability to fish, contradicts his testimony that his head, neck, and back disabilities completely prevent him from working in the national economy. Thus, good reasons and substantial evidence supports the ALJ's decision that "the intensity, persistence and limiting effects of [Ross's] symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. Doc. 12-2, at 18.

Next, Ross contends that the ALJ should have given more weight to his long work history when determining his credibility. We have held that "it is ordinarily not error if the ALJ fails to explicitly discuss the claimant's work history." *Smith v. Comm'r, Soc. Sec. Admin.*, 738 F. App'x 889, 892 (8th Cir. 2018) (unpublished per curiam) (citing *Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005)). In *Smith*, we reversed the district court and ordered remand so the ALJ could "more fully explain his credibility determination." *Id.* Here—as we have already noted—the record, as a whole, supports the conclusion that Ross's testimony is not credible. Therefore, the ALJ's failure to explicitly discuss Ross's work record is not reversible error.

## C. *Hypothetical*

Lastly, Ross contends that the ALJ posed a flawed hypothetical to the vocational expert. Specifically, he asserts the query failed to include Ross's asserted limitations on vertical head and neck movement. "A hypothetical is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." *Davis*, 239 F.3d at 966. "A hypothetical is not insufficient because it does not include all the health limitations *alleged* by the claimant." *Kraus*, 988 F.3d at 1027. The ALJ asked the vocational expert

> to assume a hypothetical person the same age, education, same work background as what we have in Mr. Ross's circumstance. I'd like you

to assume that person capable of performing sedentary exertion work as it's defined in the *Dictionary of Occupational Titles* with the following restrictions and limits: Please consider work that does not require climbing of ladders, ropes or scaffolds; no more than occasional climbing of ramps or stairs, balancing, stooping, kneeling, crouching or crawling duties; no exposure to unprotected heights in the workplace and no lower extremity foot control operation duties required. . . . [C]onsider if there would be occupations that do not require more than occasional overhead reach responsibilities for the worker. . . . [A]re there occupations nationally that you could recommend consistent with the profile outlined . . . ?

R. Doc. 12-2, at 56.

The vocational expert answered that two jobs existed considering such a profile: a document preparer and a surveillance system monitor. *Id.* at 56–57. Although Ross may be correct that those jobs require some vertical head movement, the ALJ had substantial evidence to disagree with Ross's portrayal of his head and neck limitations. Because the ALJ had substantial evidence to support his determination, he did not err by omitting those limitations in the hypothetical.

### III. *Conclusion*

Because there is substantial evidence on the whole record that supports the ALJ's decision, we affirm the district court.

———————————————